# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP653-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Wendy Alison Nora, Attorney at Law: |
| | Office of Lawyer Regulation, Complainant-Respondent, v. Wendy Alison Nora, Respondent-Appellant. |

DISCIPLINARY PROCEEDINGS AGAINST NORA

| | |
|---|---|
| OPINION FILED: | March 30, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 7, 2017 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the respondent-appellant, there were briefs and an oral argument by *Wendy Alison Nora* and *Access Legal Services*, Minneapolis, Minnesota.

For the complainant-respondent, there was a brief and an oral argument by *Paul W. Schwarzenbart* on behalf of the Office of Lawyer Regulation, Madison.

**2018 WI 23**

No.   2013AP653-D

STATE OF WISCONSIN                    :            IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Wendy Alison Nora, Attorney at Law:**

**Office of Lawyer Regulation,**

             **Complainant-Respondent,**

     **v.**

**Wendy Alison Nora,**

             **Respondent-Appellant.**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

**FILED**

**MAR 30, 2018**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1   PER CURIAM.   Attorney Wendy Alison Nora appeals from the report of the referee, Attorney Lisa C. Goldman, who found that Attorney Nora had committed four violations of the Rules of Professional Conduct for Attorneys and recommended that Attorney

Nora's license to practice law in Wisconsin be suspended for one year.[1]

¶2 Having heard oral argument and having fully reviewed this matter, we conclude that the referee's factual findings are not clearly erroneous and that those findings support the legal conclusion that Attorney Nora committed the four counts of professional misconduct alleged in the Office of Lawyer Regulation's (OLR) amended complaint. We further determine that the serious nature of Attorney Nora's misconduct and her continued refusal to acknowledge her improper use of the judicial system requires a one-year suspension of her license to practice law in this state.

¶3 Attorney Nora was admitted to the practice of law in this state in June 1975. She was also licensed to practice law in the state of Minnesota in 1985. She currently practices law under the name Access Legal Services in Minneapolis, Minnesota.

¶4 Attorney Nora has been the subject of professional discipline in this state on one prior occasion. In 1993 this court suspended Attorney Nora's license to practice law in

---

[1] The referee also recommended that the court order Attorney Nora to pay certain defense costs incurred by two law firms who were sued by Attorney Nora and that the court require Attorney Nora to pay the full costs of this disciplinary proceeding. Due to the fact that Attorney Nora currently has a bankruptcy proceeding pending and in order to avoid any possible conflict with the automatic stay arising from that bankruptcy proceeding, we have previously held the issues of restitution and costs in this proceeding in abeyance. Consequently, we will not address those issues in this decision.

Wisconsin for 30 days, as discipline reciprocal to that imposed by the Supreme Court of Minnesota. In re Disciplinary Proceedings Against Nora, 173 Wis. 2d 660, 495 N.W.2d 99 (1993) (Nora I).[2]

¶5 The allegations of misconduct in this case arise out of a foreclosure action in the Dane County circuit court against a residential property owned by Attorney Nora (the foreclosure action) and three subsequent civil actions filed by Attorney Nora against the circuit court judge and opposing counsel involved in the foreclosure action. An understanding of some of the procedural history of the foreclosure action, as found by the referee or which is undisputed, is necessary to understand the misconduct findings against Attorney Nora.

_____

[2] Attorney Nora's license to practice law in Minnesota was indefinitely suspended with the ability to petition for reinstatement after 30 days. The misconduct that resulted in that suspension involved making misrepresentations concerning the reopening and capitalization of a bank, failing to adequately investigate the person who was to provide capital to the bank, improperly authorizing the issuance of cashier checks by the bank, bringing a frivolous claim against a bank, transferring assets of her Minnesota law partnership in an attempt to insulate those assets from collection, bringing litigation primarily as a delay tactic, and asserting a legal theory not justified by existing law. Nora I, 173 Wis. 2d at 660-61; see also In re Disciplinary Action Against Nora, 450 N.W.2d 328 (Minn. 1990). While her Wisconsin license was reinstated in May 1993 after the 30-day suspension had expired, she did not successfully petition to have her Minnesota license reinstated until January 2007.

3

¶6   On March 3, 2009, the law firm of Gray and Associates, S.C. (the Gray firm) filed a foreclosure action[3] against Attorney Nora's residential property on behalf of Residential Funding Corporation (RFC), which was a related entity of GMAC Mortgage Group LLC.   Shortly after the initiation of the foreclosure action, the law firm of Bass & Moglowsky, S.C. (the Bass firm) also appeared as co-counsel on behalf of RFC.   Judge Juan B. Colas was assigned to preside over the foreclosure action.

¶7   In July 2009, after Attorney Nora had filed a number of motions and an answer to the complaint, Attorney David Potteiger of the Bass firm filed a motion for summary judgment on the issue of the foreclosure of the mortgage by RFC.

¶8   In August 2009 there were discussions between Attorney Nora and RFC/GMAC regarding the execution of a possible Foreclosure Repayment Agreement (the Agreement) that RFC/GMAC had offered to Attorney Nora.   The following facts were found by the referee based on Attorney Nora's admission of the facts alleged in the OLR's amended complaint, either through admissions in Attorney Nora's answer to the amended complaint or through an oral admission during argument on OLR's motion for summary judgment.

¶9   On August 23, 2009, Attorney Nora executed a copy of the Agreement, but she had modified a number of material terms. Specifically, she had written into the Agreement that she

---

[3] Residential Funding Co. LLC v. Nora, Dane County Case No. 09-CV-1096.

4

reserved the right to challenge the amount that remained due on the note and that she also reserved the right to assert counterclaims against RFC/GMAC.

¶10 After consulting with his client, on August 25, 2009, Attorney Potteiger "informed [Attorney] Nora in writing that the reservation of her counterclaims found in [Attorney] Nora's Foreclosure Repayment Agreement counteroffer was rejected" and that "no settlement offer existed."[4] Specifically, Attorney Potteiger explained in an affidavit that he had sent an email to Attorney Nora at 4:20 p.m. on August 25, 2009, advising her of his client's rejection of her counteroffer. At the time that the referee held a hearing on the OLR's summary judgment motion, Attorney Nora did not claim that she had failed to receive Attorney Potteiger's August 25, 2009 email.

¶11 At approximately 9:44 a.m. on August 26, 2009, Attorney Nora sent a letter and a copy of the Agreement to Judge Colas via facsimile transmission. Her letter said that as a result of the Agreement, proceedings in the foreclosure action "are stayed." Even if the Agreement was not then in effect, Attorney Nora's letter implied that an agreement was imminent, which still required the foreclosure action to be stayed. The referee found that this was a knowing misrepresentation, as Attorney Nora knew when she sent the letter that her

---

[4] In her answer, Attorney Nora specifically admitted the truth of these statements, which were found in paragraph 22 of the OLR's Amended Complaint.

5

counteroffer had been rejected and the offer of an Agreement had been withdrawn by RFC.

¶12 On September 21, 2009, Judge Colas denied Attorney Nora's request to schedule oral argument on RFC's summary judgment motion, but extended the time for her to file a response until October 1, 2009. Rather than file a summary judgment response, however, three days before that response was due Attorney Nora filed a personal bankruptcy petition, which stayed the foreclosure action.

¶13 The bankruptcy stay was lifted on December 18, 2009, which meant that the remaining few days to file a response to the summary judgment motion in the foreclosure action resumed running. Attorney Nora, however, did not file a response to RFC's summary judgment motion. On January 6, 2010, Attorney Potteiger notified Judge Colas in writing (with a copy to Attorney Nora) that the bankruptcy stay had been lifted. Attorney Potteiger sent a subsequent letter to Judge Colas indicating that, in light of the lifting of the stay and Attorney Nora's failure to file a response, the court could consider the summary judgment motion as being unopposed. Between January 14-22, 2010, Attorney Nora filed a number of motions and what she labeled as a "verified response" to the summary judgment motion. On February 9, 2010, Judge Colas granted RFC's motion for summary judgment allowing foreclosure of Attorney Nora's residential property. He struck Attorney Nora's "verified response" both because it was untimely and because it was a "mixture of argument, motions, and allegations

of fact" rather than a brief with properly developed arguments and supporting affidavits. Attorney Nora did not appeal the grant of summary judgment of foreclosure.

¶14 On February 22, 2010, after the grant of summary judgment, Attorney Nora filed a request in the foreclosure action seeking accommodations on account of an alleged disability.[5] She subsequently requested Judge Colas to appoint a guardian ad litem (GAL) for her. On March 29, 2010, Judge Colas denied Attorney Nora's request for reconsideration of his order granting summary judgment of foreclosure to RFC and her request for the appointment of a GAL. His order noted that all essential legal work in the case had concluded prior to Attorney Nora's request for an accommodation or the appointment of a GAL, that she had failed to present evidence meeting the standard for the appointment of a GAL, and that she had offered no legal authority for applying her accommodation and GAL requests retroactively to allow her to relitigate the summary judgment motion. Judge Colas denied a subsequent motion by Attorney Nora in which she sought reconsideration of the denial of her request for a GAL and sought the recusal of Judge Colas.

---

[5] The referee noted that Attorney Nora testified in this proceeding that she had sought assistance with accommodation issues from the clerk of circuit court in January 2010 because of medical issues, but the clerk's office advised her that she needed to request additional time to respond to pleadings and motions from Judge Colas. She did not do so until after he had granted summary judgment against her.

¶15 On November 15, 2010, almost eight months after Judge Colas had granted summary judgment against Attorney Nora, she sued him personally in the United States District Court for the Western District of Wisconsin (the Western District Court), alleging that he had violated the Americans with Disabilities Act (ADA), as revised. Her claim essentially was that Judge Colas had violated her federal statutory rights to disability accommodations due to an alleged back injury by not granting her extensions of time to respond to RFC's filings in the foreclosure action. As part of her request for relief, she asked the federal court to remove Judge Colas from the foreclosure action and to vacate the summary judgment order of foreclosure. Within a week of filing the federal complaint against Judge Colas, she filed a motion in the state foreclosure action to disqualify Judge Colas from continuing to preside on the ground that he was now an adverse party to Attorney Nora in a lawsuit. Attorney Nora ultimately dismissed the federal action in March 2011.

¶16 The referee found that there had been no good faith basis for Attorney Nora's federal ADA claim against Judge Colas. Attorney Nora alleged that in the state foreclosure action, he had denied her disability accommodations, but the referee found that she had not asked Judge Colas for disability accommodations prior to his grant of summary judgment nor had she properly responded to RFC's summary judgment motion despite having months to do so. Moreover, although Attorney Nora claimed that she had initiated the federal action in order to obtain disability

8

accommodations in the foreclosure action, the referee stated that Attorney Nora admitted that she was no longer experiencing a disability at the time she filed the federal action, as evidenced by the fact that she never sought disability accommodations in the federal action. The referee found that Attorney Nora's federal action against Judge Colas, especially her request that the federal court remove him from the foreclosure action and void the grant of summary judgment, had not been brought for a legitimate purpose, but rather to harass Judge Colas and to obstruct the foreclosure of her property.

¶17 On November 29, 2010, the day before the scheduled sheriff's sale of her Madison property and two weeks after she had initiated her federal lawsuit against Judge Colas, Attorney Nora sent an email to Attorney Potteiger, the Bass firm, another lawyer, and the Gray firm, threatening to sue them in federal court if they did not cancel the sheriff's sale. She filed a federal complaint in the Western District Court the same day alleging, among other things, that the opposing attorneys had violated the federal Racketeer Influenced and Corrupt Organizations Act (RICO), by, among other things, creating a fraudulent assignment of her mortgage and note to RFC and bringing the foreclosure action based on those fraudulent assignments.[6] In her prayer for relief, Attorney Nora asked the

---

[6] This action against her former opposing counsel in the Western District Court will be referenced in this opinion as "the RICO district court action" to distinguish it from the action against Judge Colas and a similar action filed in a federal bankruptcy court, which is discussed below.

9

federal court essentially to void the state court foreclosure judgment and to award her title to her home free and clear of any lien by RFC and GMAC.  She also sought an injunction against the sheriff's sale and what the referee characterized as "exorbitant" compensatory and punitive damages.

¶18 Some of the defendant attorneys and law firms were forced to hire counsel to defend against Attorney Nora's complaint.  On September 30, 2012, the Western District Court granted the defendants' motions to dismiss, holding that Attorney Nora's claims were barred by both the Rooker-Feldman doctrine[7] and claim preclusion.  Attorney Nora appealed, and the United States Court of Appeals for the Seventh Circuit affirmed.

¶19 The referee in this disciplinary case found that, based on Attorney Nora's 40 years of experience as an attorney and her comments during the summary judgment hearing, she understood the Rooker-Feldman doctrine before she filed any of her federal court actions.  The referee further found that Attorney Nora did not have a good faith basis for filing the RICO district court action against the defendants in the Western

---

[7] The Rooker-Feldman doctrine, which is based on the concept that only the United States Supreme Court may review state court judgments applying federal law, broadly prohibits federal courts from exercising subject matter jurisdiction over claims that seek relief that is tantamount to vacating a state court judgment.  United States v. Alkaramla, 872 F.3d 532, 534 (7th Cir. 2017); Mains v. Citibank, N.A., 852 F.3d 669, 675 (7th Cir. 2017); see also Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

District Court and that she had filed that action in order to harass them for taking away her Madison residence.

¶20 On March 18, 2013, nearly six months after the Western District Court had ruled that her claims against her former opposing counsel could not be brought in federal court, Attorney Nora filed an adversarial proceeding against many of the same defendants in a bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of New York (the Southern District Bankruptcy Court).[8] The referee found that the allegations in Attorney Nora's complaints in the RICO district court action and the Southern District adversarial proceeding were almost identical, that Attorney Nora knew that the adversarial proceeding was barred by the Rooker-Feldman doctrine, and that she had initiated the adversarial proceeding to harass her former opposing counsel and to reverse the state court foreclosure judgment.

¶21 After nearly eight months, Attorney Nora dismissed her Southern District adversarial proceeding as part of a settlement with the defendant attorneys and law firms. The referee found that the defendant attorneys spent a considerable amount of time

---

[8] This adversarial proceeding will be referenced in this opinion as "the Southern District adversarial proceeding."

and money defending both the RICO district court action and the Southern District adversarial proceeding.[9]

¶22 On the basis of these factual findings, either as admitted by Attorney Nora or as found by the referee after an evidentiary hearing, the referee concluded that the OLR had proven all four counts of misconduct alleged in its amended complaint by clear, satisfactory, and convincing evidence. Specifically, the referee determined with respect to Count 2 that Attorney Nora's August 26, 2009, facsimile transmission to Judge Colas alleging that her execution of a modified version of the Agreement stayed the foreclosure action constituted a false statement of material fact made to a tribunal, in violation of SCR 20:3.3(a)(1). On Count 1, the referee concluded that in bringing the federal lawsuit against Judge Colas, Attorney Nora had knowingly advanced a claim that was unwarranted under existing law (or a good faith argument for an extension, modification, or reversal of the law) and had filed a suit when she knew that the action would serve merely to harass or maliciously injure another, in violation of SCR 20:3.1(a). With respect to Counts 3 and 4, the referee also concluded that Attorney Nora's two federal complaints against her former

---

[9] For example, the referee determined that the Gray firm had spent over $25,000 hiring a separate law firm to defend against just the RICO district court action. Further, the Bass firm's malpractice insurance premiums rose as a result of Attorney Nora's allegations in the RICO district court action and the Southern District adversarial proceeding.

opposing counsel had likewise constituted violations of SCR 20:3.1(a).

¶23 Citing the factors that this court has set forth for analyzing the appropriate level of discipline,[10] the referee recommended that the court suspend Attorney Nora's license to practice law in this state for a period of one year. The referee acknowledged that other attorneys have committed more numerous violations, but stated that Attorney Nora's "violations involving an aggressive strategy to harm others warrant a suspension necessitating a petition for reinstatement so some investigation into her ability to conform her litigation tactics to appropriate boundaries occurs." The referee compared Attorney Nora's misconduct to the filing and maintaining of a frivolous lawsuit that resulted in this court imposing a six-month suspension. In re Disciplinary Proceedings Against Widule, 2003 WI 34, 261 Wis. 2d 45, 660 N.W.2d 686. Unlike Attorney Widule, however, Attorney Nora had a prior disciplinary suspension for misconduct (dishonesty and improper litigation tactics) that the referee concluded was similar to the misconduct at issue in the present proceeding. Consequently,

---

[10] Those factors include: "(1) the seriousness, nature and extent of the misconduct; (2) the level of discipline needed to protect the public, the courts, and the legal system from repetition of the attorney's misconduct; (3) the need to impress upon the attorney the seriousness of the misconduct; and (4) the need to deter other attorneys from committing similar misconduct." In re Disciplinary Proceedings Against Carroll, 2001 WI 130, ¶40, 248 Wis. 2d 662, 636 N.W.2d 718.

the referee believed that a more severe level of discipline was warranted for Attorney Nora.

¶24 When we review a referee's report, we will affirm a referee's findings of fact unless they are found to be clearly erroneous, but we review the referee's conclusions of law on a de novo basis. In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. We determine the appropriate level of discipline to impose given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. Widule, 261 Wis. 2d 45, ¶44.

¶25 Nearly all of Attorney Nora's arguments on appeal[11] focus on challenges to the procedures that the OLR and the referee followed, both prior to and during this disciplinary case. The only real challenge to the substance of the referee's report is found at the very end of Attorney Nora's opening brief, where she asserts that the evidence was insufficient to support the referee's conclusions of misconduct on Count 1 (Judge Colas lawsuit), Count 3 (RICO district court action), and

---

[11] In multiple places in her briefs, Attorney Nora purports to incorporate by reference arguments from prior filings. This is improper in appellate briefs, which are limited to a specified number of words or pages by rule. See, e.g., State v. Armstead, 220 Wis. 2d 626, 642 n.6, 583 N.W.2d 444 (Ct. App. 1998); State v. Flynn, 190 Wis. 2d 31, 58, 527 N.W.2d 343 (Ct. App. 1994); see also Michael S. Heffernan, Appellate Practice and Procedure in Wisconsin § 11.14 (7th Ed. 2017).

Count 4 (Southern District adversarial proceeding). Before turning to her various procedural arguments, we will analyze the referee's conclusions of violations on all four counts, as that impacts some of Attorney Nora's procedural arguments.

¶26 First, we address Count 2. We agree with the referee that summary judgment on this count was appropriate. Attorney Nora admitted all of the allegations in the OLR's amended complaint, either in her answer or during argument on the OLR's summary judgment motion. Specifically, she admitted that (1) she had changed a material term in the offer by writing in a reservation of her claims against the lender and (2) on the day before she faxed her letter to Judge Colas, Attorney Potteiger "informed [her] in writing that the reservation of her counterclaims found in [Attorney] Nora's Foreclosure Repayment Agreement counteroffer was rejected." Attorney Potteiger's informing her of that fact necessarily included that she had received his writing (i.e., his email). Attorney Nora's claim after summary judgment on Count 2 that she had not received his email is therefore unavailing. Her admissions demonstrate that her letter to Judge Colas contained a knowingly false statement.

¶27 Further, Attorney Nora's receipt of Attorney Potteiger's August 25, 2009 email is unnecessary to uphold the violation of SCR 20:3.3(a)(1). Like all law students, Attorney Nora knew that making material revisions to a contract offer and then signing the revised contract offer does not constitute an acceptance of the offer, but rather creates a counteroffer that the other party must affirmatively accept before there is an

15

agreement. See, e.g., Schwartz v. Handorf, 7 Wis. 2d 228, 236, 96 N.W.2d 366 (1959); Fricano v. Bank of America NA, 2016 WI App 11, ¶29, 366 Wis. 2d 748, 875 N.W.2d 143 (". . . an acceptance that varies the terms of the offer constitutes a rejection and a counteroffer"). She therefore knew at the time of her facsimile transmission to Judge Colas, even without regard to whether she had received Attorney Potteiger's reply email, that she had no binding contract. The assertion in her letter that the foreclosure action was therefore stayed because of the Foreclosure Repayment Agreement was a false statement of fact that Attorney Nora knew to be false. Accordingly, we accept the referee's conclusion of a violation of SCR 20:3.3(a)(1).

¶28 With respect to Attorney Nora's federal action against Judge Colas, the referee found that Attorney Nora had not had a legitimate purpose for filing the complaint and that she had done so in order to harass Judge Colas and obstruct the foreclosure action. Attorney Nora attacks these findings only by making a general allegation that the evidence was insufficient to support a violation and by asserting that Judge Colas was not protected by judicial immunity because her request for retroactive extensions of time due to an alleged disability were administrative matters. She does not specifically allege that the referee's findings are clearly erroneous.

¶29 Attorney Nora's assertion about a lack of judicial immunity, however, is irrelevant. The referee did not find that her federal action against Judge Colas was without merit because he was immune from suit. The referee found that Attorney Nora

16

claimed she brought the suit because she wanted to obtain disability accommodations, but she did not seek such accommodations from Judge Colas before he granted summary judgment against her and she no longer needed accommodations when she initiated the federal action. Moreover, the referee found that Attorney Nora brought the federal claim against Judge Colas not to gain disability accommodations, but as a way to force him off the foreclosure action and to undo his prior summary judgment ruling, which was included in her prayer for relief in the federal action. Given the facts as found by the referee, we agree that Attorney Nora's federal action against Judge Colas, at least to the extent it sought his disqualification and the vacation of the summary judgment in the state foreclosure action, was unwarranted under existing law and was clearly pursued in an attempt to harass or maliciously injure another, in violation of SCR 20:3.1(a).

¶30 Attorney Nora also alleges that there was insufficient evidence to support Counts 3 and 4 regarding her RICO actions against her former opposing counsel. She asserts that attorneys who actively participate in conspiracies that violate RICO are liable for damages to an injured party. As in her complaint against Judge Colas, however, her complaints against her opposing counsel were not simply seeking an award of damages, but were attempts to attack the foreclosure judgment collaterally. According to the referee, Attorney Nora initially tried in this proceeding to present certain arguments as to why her RICO complaints had been brought in good faith under

17

existing law, but she then abandoned those arguments when she filed her post-hearing brief. The referee concluded that Attorney Nora lacked credibility in her claims, that she understood the Rooker-Feldman doctrine based on her own assertions of experience with it, that she filed the federal RICO actions for the ulterior purpose of undoing or avoiding the state foreclosure judgment despite her knowledge that the doctrine prohibits subsequent federal actions from overturning prior state court judgments, and that she pursued the federal RICO actions to harass her former opponents. Tellingly, Attorney Nora does not dispute in her briefs that her federal RICO actions were intended to undo or avoid the foreclosure judgment or that she knew the Rooker-Feldman doctrine prevented the federal courts from invalidating that judgment. Accordingly, we agree with the referee that, based on the referee's findings, there is sufficient evidence to conclude that Attorney Nora violated SCR 20:3.1(a) by pursuing the two RICO actions against her former opposing counsel, as alleged in Counts 3 and 4.

¶31 We now turn to Attorney Nora's arguments challenging the process by which the OLR conducted its investigation and charging decision. She initially argues that this disciplinary proceeding violated her rights to free speech and to petition the government under the First Amendment to the United States Constitution and Article I, § 4 of the Wisconsin Constitution because the OLR intended to punish her on behalf of her litigation opponents. We reject her claims. First, she offers

18

absolutely no evidence to support her bare claim that the OLR intended to punish her. Second, Attorney Nora fails to recognize that there is no First Amendment right to violate ethical rules in litigation that prohibit attorneys from making false statements to tribunals and from using court proceedings to harass or maliciously injure presiding judges or opposing counsel. See, e.g., Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626, 638 (1985) ("The States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading."); Gertz v. Robert Welch, Inc., 418 U.S. 323, 340 (1974) ("But there is no constitutional value in false statements of fact."); McCoy v. Court of Appeals of Wisconsin, Dist. 1, 486 U.S. 429, 436 (1988) ("Neither paid nor appointed counsel may deliberately mislead the court with respect to either the facts or the law, or consume the time and the energies of the court or the opposing party by advancing frivolous arguments."); Florida Bar v. Sayler, 721 So. 2d 1152 (Fla. 1998) ("The First Amendment does not protect those who make harassing or threatening remarks about the judiciary or opposing counsel.").

¶32 Attorney Nora also asserts that she was deprived of due process and equal protection[12] during the investigation

---

[12] Although Attorney Nora mentions equal protection in her brief, she does not develop any legal argument based on equal protection. Accordingly, we do not consider that issue. Parsons v. Associated Banc-Corp., 2017 WI 37, ¶39 n.8, 374 Wis. 2d 513, 893 N.W.2d 212.

conducted by the OLR. Specifically, she alleges that the OLR violated her due process rights by improperly using and re-disclosing her medical information to the Preliminary Review Panel (PRP). We need not decide the merits of her claims in the context of this disciplinary proceeding. We conclude that this situation is similar to a claim of error at a preliminary hearing in a criminal case, which we have refused to decide when there has been a proper subsequent trial. State v. Webb, 160 Wis. 2d 622, 628, 467 N.W.2d 108 (1991) ("We do not decide the question of whether there was error at the preliminary hearing in this case, because we hold that a conviction resulting from a fair and errorless trial in effect cures any error at the preliminary hearing."). Similarly, to the extent that Attorney Nora is alleging an error or impropriety in the investigation phase, we conclude that the subsequent holding of a proper disciplinary hearing cured any arguable error.[13]

¶33 Attorney Nora also alleges that her due process rights were violated in the charging decision. Specifically, she points to the fact that Attorney Edward A. Hannan, who was the

---

[13] In any event, we question how Attorney Nora's allegations would foreclose this court from considering whether she can be disciplined for violation of the Rules of Professional Conduct for Attorneys. First, the OLR did not offer any of the medical information in this disciplinary case. Thus, no violation is based on any of the medical information. Further, the referee found that the records, which had been submitted to a federal district court, were not confidential and had not been treated as confidential by the federal district court, a fact which Attorney Nora admitted at the disciplinary hearing.

chair of the Preliminary Review Committee (PRC), had a conflict of interest because he was representing parties who were adverse to Attorney Nora in a civil action pending in the Waukesha County circuit court (Bank of America, N.A. v. Brown, Waukesha County Case No. 2011CV3333).[14]

¶34 Attorney Nora is not entitled to any relief regarding this allegation. Initially, we note that this argument was raised for the first time on appeal, and we generally do not address the merits of untimely issues, especially where raising the issue could have allowed the parties or the tribunal to take action to eliminate the ground for the objection. Terpstra v.

---

[14] Attorney Nora has filed a request for the court to take judicial notice of five documents, but it is clear from her request that she is really asking the court to take judicial notice of two adjudicative facts from those documents: (1) that Attorney Hannan served as the chair of the PRC during the 2012-13 fiscal year when the cause-to-proceed determination regarding the counts of misconduct alleged in this case was made, and (2) that during the same time period Attorney Hannan represented parties who were adverse to Attorney Nora in the Waukesha County circuit court action. We take judicial notice of these two adjudicative facts as they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Wis. Stat. § 902.01(2)(b). We do not take judicial notice of all of the contents of the five documents because not all of those contents meet this criteria. With respect to the fifth identified document, Attorney Nora's petition for an interlocutory appeal in this disciplinary proceeding, there is no need for us to take judicial notice as that document is before us as a filing in this disciplinary action.

21

*Soiltest, Inc.*, 63 Wis. 2d 585, 593, 218 N.W.2d 129 (1974). We decline to do so here.[15]

¶35 Attorney Nora also claims that this disciplinary proceeding must be invalidated in its entirety because the referee, Attorney Lisa C. Goldman, was biased against her. As examples of this alleged bias, Attorney Nora points to various decisions and rulings by Referee Goldman that were adverse to, and even critical of, Attorney Nora's requests or positions. Mere adverse rulings or critical statements based on a judicial officer's consideration of a litigant's arguments or evidence and the officer's experience with a litigant during a proceeding, however, are usually not sufficient to demonstrate bias on behalf of the presiding judicial official. See, e.g., *Liteky v. United States*, 510 U.S. 540, 555 (1994) ("First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . . Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior

---

[15] Even if we were to consider the claim, Attorney Nora has not demonstrated that her due process rights were violated. The cause-to-proceed determination in a disciplinary investigation is made by a Preliminary Review Panel, which is only a subset of the PRC. Although Attorney Hannan was the chair of the PRC, Attorney Nora does not allege that he was a member of the panel that actually reviewed her case. Indeed, at oral argument, counsel for the OLR advised the court that he was not a member of that panel, and Attorney Nora did not dispute that fact. Thus, Attorney Nora cannot show that the cause-to-proceed determination in this matter was tainted by a panel member who had a conflict of interest.

22

proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge."). We also disagree with Attorney Nora's claim that Referee Goldman demonstrated bias by becoming an advocate for the OLR rather than a neutral and detached magistrate. The record does not support this assertion.

¶36 Attorney Nora also alleges that Referee Goldman demonstrated bias by comparing Attorney Nora's continuing practice of law to a criminal who keeps committing crimes after charges have already been filed. This claim, however, is not accurate because it takes the referee's statement out of context. The referee never called Attorney Nora a criminal or compared her to a criminal. It is clear from the context of the referee's statement, which was made in the course of denying the OLR's motion for leave to file an amended complaint to add new, unrelated counts, that the referee believed such an amendment at that point in the case would interfere with the efficient resolution of this ongoing proceeding. The referee was simply reasoning by analogy to the question of amending criminal complaints to add new alleged crimes. Her point was that when there can be a new criminal charge based on conduct that occurred after the initial criminal complaint has been filed, courts usually require prosecutors to initiate a second criminal

23

proceeding rather than delaying a pending criminal case through an amendment of that complaint. The referee's comments about this procedural issue evince no animus toward Attorney Nora.

¶37 Finally, Attorney Nora claims that the referee admitted her bias because in her decision denying Attorney Nora's second motion for disqualification, the referee stated that she had "not acted impartially." This argument borders on the frivolous, as it is clear from the surrounding text that the inclusion of the word "not" was an unintended, typographical error. The referee unambiguously rejected Attorney Nora's claims that she was biased. There is no legal basis for this court to find otherwise.

¶38 In the end, we find no basis in the record to overturn Referee Goldman's subjective determination that she could be fair in her duties or to conclude that Referee Goldman was objectively biased.

¶39 We have considered the rest of Attorney Nora's arguments alleging prosecutorial misconduct by the OLR and erroneous procedures by the referee. We conclude that they are without legal merit, although we will not address them specifically in this opinion.

¶40 We turn now to the issue of the appropriate sanction for the four counts of misconduct that we have found. We agree with the referee's analysis of Attorney Nora's misconduct in comparison to the misconduct that resulted in a six-month suspension for Attorney Widule. Unlike Attorney Widule, Attorney Nora has been disciplined previously for misconduct,

24

some of which was similar in nature. Moreover, her misconduct in this case is aggravated by the fact that it was not an isolated occurrence, but rather was a pattern of multiple instances of misconduct that stretched over a substantial period of time. In addition, her misconduct was not based on her failure to do something, but on her affirmative and aggressive attempts to use the judicial system to obstruct the foreclosure of her property and to harass those she apparently deemed responsible for the loss of that property. She has offered no basis for this court to conclude that she recognizes her misconduct or that she would change her tactics in similar circumstances in the future. Accordingly, we conclude that the misconduct at issue here requires a more severe level of discipline than we imposed on Attorney Widule. We determine that a one-year suspension of Attorney Nora's license to practice law in Wisconsin is necessary and appropriate under these circumstances.

¶41 Finally, it seems apparent that Attorney Nora believes that she must personally fight abuses or improprieties in the real estate lending industry. A lawyer's fight for any cause, however noble one might think it to be, must be conducted within the ethical rules that govern the lawyer's conduct. Attorney Nora must demonstrate that she understands this principle and can conform her conduct to the applicable ethical rules before she may return to the practice of law in this state.

¶42 IT IS ORDERED that the license of Wendy Alison Nora to practice law in Wisconsin is suspended for a period of one year, effective April 30, 2018.

¶43 IT IS FURTHER ORDERED that the issues of restitution and the assessment of costs shall continue to be held in abeyance for resolution at a subsequent time after the automatic stay arising from Attorney Nora's bankruptcy proceeding has been lifted.

¶44 IT IS FURTHER ORDERED that Wendy Alison Nora shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶45 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement from the suspension imposed herein.