**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**March 23, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1884-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2015CF470

**IN COURT OF APPEALS**
**DISTRICT III**

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

KEVIN R. DUNAY,

  DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Outagamie County: MARK J. McGINNIS, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Seidl, JJ.

Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).

¶1 PER CURIAM. Kevin Dunay appeals from convictions stemming from sexually explicit communications with a thirteen-year-old girl.[1] Dunay also challenges an order denying postconviction relief. During his criminal case, Dunay repeatedly threatened law enforcement officers, the prosecutor, and the circuit court judge assigned to his case. Dunay argues that the judge was required to recuse himself from this case because of the threats. We affirm.

## BACKGROUND

¶2 Dunay communicated with the thirteen-year-old girl online, and they began messaging each other. Dunay lived in New Jersey, and the victim lived in Outagamie County. Dunay told the victim that he was forty years old, but he was actually forty-eight. Dunay initially believed the victim was eighteen years old, but he kept communicating with her after she told him that she was only thirteen. Dunay told her he was divorced but, in fact, he was married and lived with his wife and three teenage sons.

¶3 Dunay asked the victim to show her body to him, and when she was reluctant, Dunay told her it was okay to do so because they were in a relationship and he loved her. The victim eventually sent in excess of fifty images to Dunay over a five-month period of herself stripping, masturbating, and sexually touching herself. Dunay also sent images of himself to her, depicting his genitals and videos of himself masturbating, among other things. They also exchanged many disturbing and explicit statements regarding sexual topics, including anal sex.

---

[1] Dunay, pro se, has submitted correspondence to this court on numerous occasions during the course of this appeal. Dunay is represented by an attorney. When a litigant is represented by counsel, he or she is not entitled to conduct court proceedings pro se. We will therefore take no action on his correspondence.

¶4      The victim's mother eventually found two images on the victim's phone depicting the victim's bare breasts. The victim told her mother that she had sent the pictures to "Kevin" and that he called her his girlfriend. The mother then contacted law enforcement.

¶5      The State of Wisconsin charged Dunay with sexual exploitation of a child, child enticement, causing a child to view or listen to sexual activity, and causing a child to expose intimate parts. The State of New Jersey charged Dunay with four felony counts of endangering the welfare of a child. Dunay was arrested and jailed in New Jersey before being extradited to Wisconsin. Dunay pleaded no contest to the four counts in Wisconsin.

¶6      While in the Outagamie County jail, Dunay stated that he would kill the circuit court judge and the district attorney when he was released. After the plea hearing, the State provided the court with copies of nineteen phone calls Dunay had made from jail exhibiting his "vengefulness." In the recordings, Dunay referred to the judge as "the worst" and a "fuckin' piece of shit."

¶7      Outagamie County jail's mental health professional and community liaison met with Dunay at the jail to offer her expert assistance after learning of his frequent angry statements and behavior. During this meeting, Dunay told her that he planned to kill the circuit court judge and other people when he was released from prison and that "I have nine years to plan that."

¶8      At the sentencing hearing, Dunay acknowledged the jail phone recordings showed that he made threats against the judge as well as others, but Dunay claimed he was merely "venting" and would not carry out the actions. The

court imposed a sentence of twelve years' initial confinement and twenty years' extended supervision.[2] Following his transfer to Dodge Correctional Institution, Dunay continued to make statements about his plans to kill the judge, police, and prosecutors after his release from prison.

¶9 Dunay had also made death threats against members of the criminal justice system while in New Jersey, stating he wanted to kill two New Jersey detectives for ruining his life. He made threatening statements toward the detectives and prosecutors "every day" and "all day long" while incarcerated in New Jersey. He even sang in the shower about how he was going to kill a New Jersey detective. He also threatened to kill some of his victim's family members.

¶10 Dunay filed postconviction motions seeking to withdraw his pleas on the grounds that he misunderstood information about his possible sentences and about a possible federal prosecution; for resentencing on the grounds that his trial counsel was ineffective by failing to move the circuit court to recuse itself because of Dunay's threats against the court and "the entire judicial system"; and for the court to recuse itself from his case because of the threats. Dunay also subsequently filed a brief in the circuit court arguing he was entitled to discovery prior to any restitution hearing.

¶11 Following three hearings, the circuit court ordered Dunay to pay restitution and it denied his postconviction motions for resentencing, plea withdrawal, recusal, and discovery before the restitution hearing. Dunay now

---

[2] The sentencing court imposed twelve years' initial confinement. At the postconviction hearing, the court added two months for contempt of court.

4

appeals, arguing that the judge was biased and required to recuse himself due to Dunay's threats.

## DISCUSSION

¶12 There is a presumption that a judge is free of bias and prejudice. *State v. Jensen*, 2011 WI App 3, ¶95, 331 Wis. 2d 440, 484, 794 N.W.2d 482 (2010). To overcome the presumption, the party asserting judicial bias must show by a preponderance of the evidence that the judge is biased or prejudicial. *Id.*

¶13 Dunay does not argue that the circuit court was subjectively biased. We need only determine, therefore, whether the court was objectively biased. *State v. Goodson*, 2009 WI App 107, ¶8, 320 Wis. 2d 166, 771 N.W.2d 385. Objective bias can exist when a reasonable person could question the court's impartiality based on the court's statements, or when there are objective facts demonstrating the judge in fact treated the defendant unfairly. *Id.*, ¶9.

¶14 Dunay argues the circuit court was objectively biased "under both of the objective tests." His arguments, however, are largely conclusory. As we discern them, he contends his threats to kill the judge caused the court to rule against him on each of the postconviction motions, "as a result of the court's clouded judgment." In turn, Dunay asserts the court's denial of his motions would keep him in prison, thus affecting his ability to carry out his death threats. Dunay therefore contends "there were ample reasons for the court to be bias[ed] and deny the defendant's postconviction arguments."

¶15 Judicial rulings alone almost never constitute a valid basis for a bias or impartiality motion. *OLR v. Nora*, 2018 WI 23, ¶35, 380 Wis. 2d 311, 909 N.W.2d 155. Moreover, threats against judges generally do not require recusal.

*See, e.g.*, **S.E.C. v. Bilzerian**, 729 F. Supp. 2d 19, 24 (D.D.C. 2010) (collecting cases). Recusal is required only if a judge's opinions or remarks display a deep-seated antagonism or favoritism that would make fair judgment impossible. **Liteky v. United States**, 510 U.S. 540, 555 (1994). Were the rule otherwise, a defendant could readily manipulate the system, threatening every jurist assigned until the defendant gets a judge he or she prefers. *See* **United States v. Holland**, 519 F.3d 909, 915 (9th Cir. 2008).

¶16 Dunay points to no statement or other indication by the circuit court that would suggest the type of deep-seated antagonism necessary to demonstrate bias or impartiality. Contrary to Dunay's perception, the court in the present case did not accelerate court procedures with the stated purpose of getting Dunay into prison as soon as possible. Nor does the record on appeal suggest that the court responded to Dunay's repeated threats in a way that would reasonably suggest that the court was biased against Dunay.

¶17 Absent unique and extraordinary circumstances, threats or plots by a criminal defendant against the judge presiding over his or her case do not mandate a judge's recusal—even death threats. *See* **United States v. Yousef**, 327 F.3d 56, 170 (2d Cir. 2003). Dunay's case is not sufficiently unique or extraordinary to warrant recusal as a matter of law. Indeed, if Dunay's assertions were enough to prove objective bias, recusal could be mandatory in virtually every criminal case where a defendant threatens to kill a judge.

¶18 Moreover, Dunay does not develop an argument that the circuit court's rulings were wrong or unfair regarding his discovery, restitution, plea withdrawal, or resentencing motions. Dunay points to nothing more than the fact that the court ruled against him. Dunay's assertions do not establish objective

bias, even if we could somehow say the rulings were incorrect. The court did not err in declining to recuse itself from ruling on Dunay's postconviction motions.

> *By the Court.*—Judgment and order affirmed.

> This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).