# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP2442-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Wendy Alison Nora, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>      Complainant-Cross-Appellant-Respondent,<br>      v.<br>Wendy Alison Nora,<br>      Respondent-Appellant-Cross-Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST NORA

| | |
|---|---|
| OPINION FILED: | July 14, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 28, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| Per Curiam. | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the respondent-appellant-cross-respondent, there were briefs filed by *Wendy Alison Nora* and *Access Legal Services*, Minneapolis, Minnesota. There was an oral argument by *Wendy Alison Nora*.

For the complainant-respondent-cross-appellant, there were briefs filed by *Paul W. Schwarzenbart* and *Office of Lawyer Regulation*, Madison. There was an oral argument by *Paul W. Schwarzenbart*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2015AP2442-D

STATE OF WISCONSIN                    :        IN SUPREME COURT

In the Matter of Disciplinary Proceedings
Against Wendy Alison Nora, Attorney at Law:

Office of Lawyer Regulation,

    Complainant-Cross-Appellant-Respondent,

    v.

Wendy Alison Nora,

    Respondent-Appellant-Cross-Respondent.

**FILED**

**JUL 14, 2020**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding.  *Attorney's license suspended.*

¶1   PER CURIAM.   Attorney Wendy Alison Nora appeals from various interlocutory orders and a final report issued by the referee, Attorney James Winiarski.  Attorney Nora challenges the conduct of the proceeding by the Office of Lawyer Regulation (OLR) and Referee Winiarski, as well as the referee's findings of fact and his legal conclusions that she engaged in professional misconduct as alleged in Counts 2, 3, and 5 of the OLR's second amended complaint.   She also challenges his

recommendation that this court should suspend her license to practice law in Wisconsin for a period of two years.

¶2 The OLR has filed a cross-appeal from the referee's legal conclusions that Counts 1 and 4 of its second amended complaint should be dismissed on due process grounds because those counts failed to specify which subsections of Supreme Court Rule (SCR) 20:3.1(a) Attorney Nora's conduct had violated.

¶3 We reject Attorney Nora's arguments on appeal and conclude that the OLR proved violations of the Rules of Professional Conduct for Attorneys on all five counts of the second amended complaint. We do not agree with the referee's conclusion that Counts 1 and 4 should be dismissed on due process grounds because we determine that Attorney Nora forfeited any due process notice challenge by not raising it before the referee. Had she raised the issue in a timely manner before the referee, the OLR could have amended its complaint to more fully specify the subsections at issue. Moreover, the OLR's complaints did specify the particular actions by her that constituted violations of the rule. Attorney Nora had notice of the allegations against her.

¶4 We further conclude that the appropriate level of discipline to impose upon Attorney Nora for her professional misconduct is a further two-year suspension of her license to

practice law in this state.[1] Given the nature of her misconduct at issue in this proceeding, we do not require her to pay any restitution. We do, however, require that if Attorney Nora seeks the reinstatement of her license, her reinstatement petition must allege that she has made a good faith effort to pay all outstanding amounts that she personally owes as a result of sanction orders imposed by any court, and she must prove that good faith effort as one of the conditions of reinstatement.

¶5 Because the OLR has requested that we not impose the costs of this proceeding on Attorney Nora, we do not impose any costs.

¶6 Attorney Nora was admitted to the practice of law in this state in June 1975. She was also licensed to practice law in the state of Minnesota in 1985. She most recently practiced law under the name Access Legal Services in Minneapolis, Minnesota.

¶7 Attorney Nora has been the subject of professional discipline in this state on two prior occasions. In 1993 this court suspended Attorney Nora's license to practice law in Wisconsin for 30 days, as discipline reciprocal to that imposed by the Supreme Court of Minnesota. In re Disciplinary

---

[1] Attorney Nora's license to practice law in Wisconsin is currently suspended as discipline for professional misconduct in a previous disciplinary proceeding. In re Disciplinary Proceedings Against Nora, 2018 WI 23, 380 Wis. 2d 311, 909 N.W.2d 155 (Nora II). Attorney Nora's license is also administratively suspended due to her failure to pay mandatory bar dues and her failure to file a trust account certification.

*Proceedings Against Nora*, 173 Wis. 2d 660, 495 N.W.2d 99 (1993) (*Nora I*). The misconduct that resulted in that suspension involved making misrepresentations concerning the reopening and capitalization of a bank, failing to adequately investigate the person who was to provide capital to the bank, improperly authorizing the issuance of cashier checks by the bank, bringing a frivolous claim against a bank, transferring assets of her Minnesota law partnership in an attempt to insulate those assets from collection, bringing litigation primarily as a delay tactic, and asserting a legal theory not justified by existing law. *Nora I*, 173 Wis. 2d at 660-61; *see also* *In re Disciplinary Action Against Nora*, 450 N.W.2d 328 (Minn. 1990).

¶8 In 2018 this court suspended Attorney Nora's license to practice law in this state for a period of one year, effective April 30, 2018. *Nora II*, 380 Wis. 2d 311, ¶42. In that case this court determined that the OLR had proven four counts of professional misconduct arising out of her actions in defending a foreclosure action against her own property and in bringing three federal civil actions against the state court judge presiding over the foreclosure action and against opposing counsel in the foreclosure action. Specifically, this court concluded that Attorney Nora had made a false statement of material fact to a tribunal, in violation of SCR 20:3.3(a)(1). *Id.*, ¶27. We also determined that in each of the three federal actions, Attorney Nora had knowingly advanced claims that lacked a valid legal basis and had pursued the claims merely to harass

4

or maliciously injure another. Id., ¶¶29 and 30 (finding three violations of SCR 20:3.1(a)).

## PROCEDURAL HISTORY OF THIS PROCEEDING

¶9 Some procedural facts about this disciplinary proceeding are necessary for an understanding of certain legal conclusions by the referee and of certain issues on appeal.

¶10 On November 30, 2015, the OLR filed its original complaint in this proceeding, which alleged five counts of professional misconduct by Attorney Nora arising out of two client representations. Counts 1-3 arose out of Attorney Nora's actions connected to her representation of Sheila Spencer (the Spencer matter). Count 1 alleged that Attorney Nora had violated Supreme Court Rule (SCR) 20:3.1(a) as follows:

> By removing a state court foreclosure matter to the federal court after four years of litigation when there was no colorable basis for federal jurisdiction, and, by filing a frivolous motion to reconsider the order remanding the matter back to the state court, [Attorney] Nora violated SCR 20:3.1(a).

Count 2 alleged that by filing a frivolous appeal on behalf of both her client and herself personally when she was not a party to the litigation and by engaging in an ongoing pattern of conduct to harass other parties and judicial officers and to delay the proceedings, Attorney Nora violated SCR 20:3.2. Count 3 alleged that by engaging in an ongoing pattern of conduct to harass other parties and judicial officers and to delay the proceedings, Attorney Nora violated the Attorney's Oath in SCR 40.15, which is enforced via SCR 20:8.4(g).

5

¶11 Counts 4-5 arose out of Attorney Nora's actions connected to her representation of Roger and Desa Rinaldi (the Rinaldi matter). Count 4, like Count 1, alleged that Attorney Nora had violated SCR 20:3.1(a) in the Rinaldi matter as follows:

> . . . by filing a motion to intervene and a motion for relief from the Court's prior orders pursuant to F.R.C.P.[2] 60(b)(2), which motions were found to be frivolous, after the U.S. District Court had warned [Attorney] Nora that any further frivolous submissions would result in an award of sanctions, [Attorney] Nora violated SCR 20:3.1(a).

Count 5 tracked Count 2 in that it alleged that by filing a motion to intervene personally and a motion for relief from the federal district court's prior order, both of which were found to be frivolous, Attorney Nora violated SCR 20:3.2.

¶12 Attorney Nora filed combined motions to dismiss the original complaint on several grounds. Before the referee decided these motions, the OLR filed a first amended complaint, which did not change any of the counts alleged against Attorney Nora, but simply corrected some factual allegations in the original complaint. The referee's subsequent scheduling order provided that Attorney Nora's pending motions would apply to the first amended complaint and permitted Attorney Nora to file any additional motions regarding the first amended complaint within 20 days. Attorney Nora filed a "supplement" to her motions to dismiss, as well as a "notice of filing" of a proposed modified

---

[2] This is a citation abbreviation for "Federal Rule of Civil Procedure ___."

6

amended complaint that excluded facts Attorney Nora contended were false.

¶13  Attorney Nora's motions did not assert that either the original complaint or the first amended complaint violated her due process rights because Counts 1 and 4 of those complaints failed to specify the subsection of SCR 20:3.1(a) that Attorney Nora had violated.

¶14  On April 16, 2016, the referee denied Attorney Nora's motions to dismiss the original and first amended complaint.  He gave Attorney Nora 20 days in which to file an answer to the first amended complaint.

¶15  On May 20, 2016, Attorney Nora filed a "Corrected Motion to Dismiss and Answer."[3]  Attorney Nora asserts on appeal that in a subpart of this document responding to Count 4 of the first amended complaint (paragraph 90), she alleged that paragraph 90 of the first amended complaint failed to specify which subsection of SCR 20:3.1(a) she had violated in the Rinaldi matter.  She does not assert on appeal that she ever made a similar allegation regarding Count 1.  Further, her reference to paragraph 90 in this document never alleged that the OLR's failure to specify the subsection of SCR 20:3.1(a) constituted a due process violation.

---

[3] A few days before filing this motion and answer, Attorney Nora filed two other motions:  (1) a motion for damages pursuant to Wis. Stat. § 894.044 and (2) a motion to disqualify Attorney Paul Schwarzenbart from representing the OLR in this proceeding (allegedly due to his conflict of interest as a material witness to crimes supposedly committed in Nora II).

¶16 On June 3, 2016, the OLR filed a motion seeking leave to file a second amended complaint. The purpose of the second amended complaint was to correct two minor errors in the amended complaint, including the listing of the wrong circuit court case number for the foreclosure action against Sheila Spencer.

¶17 On August 1, 2016, the referee issued another order that denied Attorney Nora's pending motions and granted the OLR's motion to file a second amended complaint. The OLR subsequently filed a second amended complaint, as permitted. The second amended complaint did not change the nature of the counts alleged against Attorney Nora, nor the specific actions by her that allegedly violated the specified Rules of Professional Conduct for Attorneys.

¶18 Ultimately, after some further proceedings in the case, Attorney Nora filed a "notice of filing" of four different versions of a revised answer to the second amended complaint. Attorney Nora did not allege that the lack of specified subsections in Counts 1 and 4 violated her due process right to notice of the charges against her.

¶19 After the referee granted a series of motions by Attorney Nora and her co-counsel to adjourn the evidentiary hearing, the referee conducted the disciplinary hearing in this matter over four days in March 2017. The referee issued a post-hearing order directing the OLR to file a post-hearing brief within 45 days from the filing of the hearing transcript and Attorney Nora to file her post-hearing brief within 45 days after the OLR filed its brief. After the referee granted

8

another series of extension motions, the post-hearing briefing was completed in February 2018. Attorney Nora's post-hearing brief did not allege that the reference to SCR 20:3.1(a) rather than to one or more subsections of that rule violated her due process rights.

¶20 While working on his report, the referee became concerned with whether the lack of specification in Counts 1 and 4 of the applicable subsection(s) of SCR 20:3.1(a) violated Attorney Nora's due process rights. He ordered the parties to submit supplemental post-hearing briefs on this issue, which they did.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW CONCERNING COUNTS 1-3**

¶21 The following facts were found by the referee in his report.

¶22 In April 2009, FNMC filed a foreclosure action in the Wood County circuit court against Sheila Spencer. FNMC v. Spencer, Wood County Case No. 2009CV283 (the Spencer Wood County Case). Ms. Spencer was initially represented by another attorney. That attorney was allowed to withdraw in April 2012, and Attorney Nora filed a notice of appearance on behalf of Ms. Spencer in May 2012. Attorney Nora initially appeared at a May 23, 2012 hearing that had been scheduled as a summary judgment hearing, and asked for a postponement of the hearing. Judge Gregory Potter, who was presiding over the case, granted Attorney Nora's requested postponement and directed her to file a list of issues that she believed needed to be resolved by June 29, 2012.

¶23 Attorney Nora did not file the list of issues as ordered. On June 23, 2012, she filed a "Notice of Continuing Objection to Further Proceedings." She filed an amended "Continuing Notice" on June 25, 2012. In these "Continuing Notices," she alleged that Gray and Associates, S.C. (the Gray Firm) had made multiple fraudulent filings in the Spencer Wood County Case. She also alleged that she had not been served with a copy of a proposed order that Judge Potter had signed on June 12, 2012. She claimed that the lack of service of the draft order was part of "an actual pattern and practice by Judge Potter and [the Gray Firm], acting in concert, to effectuate a fraudulent foreclosure against Sheila M. Spencer and her home." Attorney Nora claimed that Judge Potter's signing of the allegedly improper ex parte order meant that the "entire record of the proceedings must be reviewed in light of the apparent collaboration between Judge Potter and [the Gray Firm]." Attorney Nora further accused Judge Potter of "manipulat[ing]" both the record and the foreclosure action generally to assist the Gray Firm in depriving Ms. Spencer of a chance to defend against the foreclosure:

> The manipulation of the Transcript to remove some of the most damning evidence of bias . . . discloses a whole new issue: that **_Judge Potter is complicit in the manipulation of the proceedings and of the record._** (Emphasis added.)

¶24 On June 27, 2012, Attorney Nora filed an extension motion and an "Affidavit of Nonreceipt of Motion for Proposed Order and Final Order." In the affidavit, Attorney Nora claimed

10

that she had not received the order dated June 12, 2012, and that she had been shocked to find that the court had entered an order resulting from the May 23rd hearing without a motion for entry of such an order being served on her. The affidavit further stated that the court's clerk had told Attorney Nora that someone from the Gray Firm had sent a letter and a proposed order to Judge Potter. Attorney Nora did not contact the Gray Firm to obtain a copy of the letter to see if she had been copied on it; instead, she alleged in her affidavit that the letter and enclosed draft order had been an "ex parte communication with the Court."

¶25 The very next day (June 28, 2012) Attorney Nora filed a motion to disqualify Judge Potter for "repeatedly engaging in or facilitating ex parte communications and entering ex parte orders." In the motion Attorney Nora described the Spencer Wood County Case as a "mockery of justice" and as "misbegotten proceedings." Attorney Nora acknowledged that she had received a copy of the Gray Firm's letter and draft order from her client. The letter showed that a carbon copy had been sent to Attorney Nora. The referee found that Attorney Nora could not explain how Judge Potter would have known that she did not receive a copy of the letter and draft order when she was shown on the letter as receiving a carbon copy.

¶26 Attorney Nora did not stop with accusing Judge Potter of engaging in ex parte communications in this one instance; she alleged that Judge Potter and the Gray Firm had engaged in multiple instances of ex parte communications and ex parte

11

orders prior to her appearance in the case,[4] although Attorney Nora had no firsthand knowledge of the other instances she alleged. Attorney Nora went so far as to assert that *"[a] reasonable inference arises from these facts that Judge Gregory J. Potter has colluded with GRAY & ASSOCIATES, LLP to circumvent proper practice and procedure by engaging in and facilitating ex parte communications by which orders have been entered by the court."* (Emphasis added.) Attorney Nora demanded that Judge Potter recuse himself immediately.

¶27 At a hearing on August 8, 2012, Judge Potter denied Attorney Nora's recusal motion. On August 13, 2012, Attorney Nora finally filed the list of issues that she had been ordered to file by June 29, 2012. Her list of issues again repeated her allegation that Judge Potter and the Gray Firm had engaged in improper ex parte communications.

¶28 On October 3, 2012, Attorney James Carrig first appeared for the plaintiff, which caused Attorney Nora to file a motion to strike his appearance. Judge Potter held a hearing on Attorney Nora's motion and on whether PNC Bank should be substituted as the plaintiff in the action. Following the hearing, Attorney Carrig filed a formal motion to "ratify the

---

[4] An affidavit by an employee of the Gray Firm that was filed in this proceeding stated that on the date of one such alleged ex parte communication, Ms. Spencer had been served with a copy of the notice of motion and motion. The court record shows that on the other occasions of alleged ex parte communications, the letters and enclosed documents were copied to Ms. Spencer.

action or substitute PNC Bank as the party plaintiff." Ultimately, the circuit court granted the motion to substitute PNC Bank and set a hearing date of March 18, 2013, for the hearing on the plaintiff's summary judgment motion (which had been pending since before Attorney Nora had joined the case).

¶29 Attorney Nora responded to this development by filing a notice of removal of the action to the United States District Court for the Western District of Wisconsin on January 10, 2013. Attorney Nora alleged that the removal was proper under 28 U.S.C. §§ 1331, 1332, 1334, and 1349 (i.e., both diversity and federal question jurisdiction). PNC Bank filed a motion for remand, which the district court, Judge Barbara Crabb presiding, granted. Judge Crabb also granted an award of attorney fees and costs to PNC Bank (apparently against Ms. Spencer, but not Attorney Nora).

¶30 On April 8, 2013, Attorney Nora filed a motion for reconsideration of Judge Crabb's remand order. Attorney Nora claimed in this disciplinary proceeding that she had not sought reconsideration of the remand order, but only of the award of attorney fees and costs. The referee found, however, that the reconsideration motion was not limited to addressing the award of costs and fees, noting that 41 of the 43 paragraphs in Attorney Nora's reconsideration motion asserted that Judge Crabb had erred in remanding the case back to state court. Indeed, the prayer for relief in the reconsideration motion "request[ed] that the court reconsider the Order remanding this case to state court entered on March 25, 2013 for its clear errors of law in

13

failing to acknowledge and exercise its original jurisdiction . . . ."

¶31 Judge Crabb ultimately denied the motion for reconsideration, holding that the district court lacked jurisdiction to reconsider its remand order. Judge Crabb also held that because Spencer had not had "an objectively reasonable argument supporting federal jurisdiction," it was appropriate to award PNC Bank the fees it had incurred in moving to remand the case. In other words, Judge Crabb found the removal to be frivolous. Attorney Nora filed a second motion for reconsideration, which rehashed the same arguments and included a statement that the federal district court "is wrong." The second reconsideration motion was also denied. Judge Crabb awarded PNC Bank its costs and fees in opposing the two reconsideration motions. Although the referee's findings do not say so explicitly, it appears that the district court entered judgment for the fees and costs against Ms. Spencer, not against Attorney Nora. The total of the cost judgment was $4,928.47 in favor of PNC Bank.

¶32 Attorney Nora filed a notice of appeal from Judge Crabb's orders granting remand and denying her two reconsideration motions. In the notice of appeal and in an amended notice, Attorney Nora identified herself as a defendant-appellant "individually and in her capacity as counsel for Sheila M. Spencer." The referee found that Attorney Nora had not filed any document seeking to be made a party to the case before she filed her initial and amended notices of appeal. He

14

also explicitly found that "[Attorney] Nora knew that remand orders were not appealable under Title 28 of the United States Code."

¶33 The United States Court of Appeals for the Seventh Circuit issued an order directing Attorney Nora and her client to file a memorandum explaining why the appeal should not be dismissed for lack of jurisdiction.  In her memorandum, Attorney Nora claimed that she had "the right and indeed the obligation to appear in her individual name and capacity as an aggrieved party" because she was the "target" of the sanctions imposed by the district court and she was "ethically obligated to indemnify Spencer for the cost and fee judgment."  Nora also included a statement that ***"Judge Crabb has engaged in a campaign of libel against Nora which will be addressed in the appropriate fora."*** (Emphasis added.)

¶34 Before the Seventh Circuit could rule, however, Attorney Nora filed a bankruptcy petition on behalf of Ms. Spencer, which delayed briefing on the Spencer appeal for a little less than five months.  Ultimately, on August 13, 2014, the Seventh Circuit issued a decision dismissing the appeal filed by Attorney Nora, concluding that there had been "no objectively reasonable basis for federal jurisdiction or removal" and that the appeal had been frivolous.[5]  The Seventh

---

[5] The Seventh Circuit ultimately awarded PNC Bank over $25,000 in attorney fees and costs in responding to the frivolous appeal.

15

Circuit ordered Attorney Nora to show cause why she should not be sanctioned for pursuing a frivolous appeal.

¶35 Attorney Nora filed an initial response to the Seventh Circuit's order to show cause just two days later. In her initial response, she claimed that the Seventh Circuit's decision contained "numerous factual findings for which there is no evidence in the record, for which judicial notice was not properly taken and which are offered to be proved to be clearly erroneous." Attorney Nora also rehashed her arguments regarding removal and repeated her claim that Judge Crabb had libeled her by removing the seal from her medical records in a completely unrelated case. Indeed, Attorney Nora claimed that Judge Crabb was in contempt of a Seventh Circuit order by removing the seal.[6]

¶36 The Seventh Circuit ordered Attorney Nora to file "one proper response" to four questions listed in the order. Instead of complying with the Seventh Circuit's order, Attorney Nora filed a petition for rehearing en banc, in which she again repeated all of the removal/remand arguments she had made before. The Seventh Circuit denied the petition. Attorney Nora then moved for a stay so she could file a certiorari petition in the U.S. Supreme Court, but she never actually filed the certiorari petition.

---

[6] The referee found from a copy of Judge Crabb's decision in the other case, which was admitted into evidence in this proceeding, that the basis for the ruling was that Attorney Nora had failed to file the documents under seal pursuant to an existing protective order and had not moved to seal them.

¶37 Despite the Seventh Circuit's directive to file "one response," on September 14, 2014, Attorney Nora filed a document entitled "Partial Response to Order to Show Cause." In that document, she denied that she had accused Judge Potter and his court reporter of "fraudulently manipulating transcripts." She also included a number of accusations against the Seventh Circuit and lower courts in the circuit. Specifically, she stated, ***"The bias of this panel and many of the judges in this circuit against homeowners' rights to be heard and defend their homes is apparent in every disputed sentence of the 'findings' in the panel's decision."*** (Emphasis added.) She also asserted that a number of the statements in the Seventh Circuit's decision were "false," including that she had accused Judge Potter, opposing counsel, and the court clerk of colluding to conceal the contents of an order, that she had accused the court reporter of intentionally manipulating a hearing transcript at Judge Potter's direction, and that she had demanded that Judge Potter recuse himself. On October 17, 2014, Attorney Nora filed a motion for a continuance of the show cause hearing allegedly due to medical reasons. The Seventh Circuit denied Attorney Nora's motion for a continuance, but it allowed her to appear for the hearing by speakerphone. Although she had asserted an inability to appear due to medical reasons, Attorney Nora appeared in person for the October 28, 2014 show cause hearing. Ultimately, the Seventh Circuit imposed a $2,500 sanction on Attorney Nora for frivolous and needlessly antagonistic filings. In its sanction order, the Seventh Circuit stated that Attorney

17

Nora had failed to comply with its order to limit herself to "one proper response" to the court's order to show cause. It also described Attorney Nora's petition for rehearing en banc as "rehashing her frivolous appellate arguments." It stated that Attorney Nora had engaged in "conduct unbecoming a member of the court's bar." It explained the basis for its sanction as follows:

> Nora has repeatedly acted with needless antagonism toward opposing counsel and judicial officers. In her responses to our order to show cause, she has refused to back down from her accusations of libel against Judge Crabb and "actionable civil fraud and racketeering" against opposing counsel. She denies accusing the state court judge of altering transcripts, but the record belies her denial; she not only made the accusation but moved for substitution of the judge on that basis. She also now derides "this panel and many of the judges in this circuit" as being biased "against homeowners' rights to be heard and defend their homes." This bandying about of serious accusations without basis in law or fact is unacceptable and warrants sanctions.

¶38 On March 10, 2014, when the Spencer foreclosure action was again pending in the Wood County circuit court, Attorney Nora filed a second motion to disqualify Judge Potter, which he again denied. Judge Potter subsequently granted PNC Bank's summary judgment motion, entered a judgment of foreclosure, and dismissed Spencer's counterclaim. The circuit court confirmed the sheriff's sale of the foreclosed property. Attorney Nora filed appeals from both the judgment of foreclosure and from the order confirming the sale. In May 2016 the court of appeals affirmed the judgment of foreclosure and the confirmation order.

18

¶39 The OLR alleged three counts of professional misconduct arising out of Attorney Nora's actions in representing Ms. Spencer, most of which addressed Attorney Nora's conduct in federal court. In Count 1 the OLR alleged that Attorney Nora had violated SCR 20:3.1(a) by taking two actions: (1) removing the foreclosure action to federal court without a colorable basis for federal jurisdiction, and (2) filing a frivolous motion to reconsider Judge Crabb's remand order.[7] The referee concluded that this count should be dismissed because Attorney Nora was deprived of due process when the OLR's complaints failed to give her adequate notice of the misconduct with which she was charged by failing to specify the subsection of SCR 20:3.1(a) that she had violated.[8]

¶40 With respect to Count 2, the referee concluded that the OLR had proven that Attorney Nora had violated SCR 20:3.2[9] by filing a frivolous appeal on behalf of her client and herself when she was not a party to the litigation and by engaging in an ongoing pattern of conduct to harass other parties and judicial officers and to delay the proceedings.

_____

[7] The operative language of Count 1 is set forth in paragraph 10 above.

[8] The referee acknowledged that if this court concluded that there was no due process violation, the OLR had proven by clear, satisfactory and convincing evidence that the conduct described in Count 1 had violated all three subsections of SCR 20:3.1(a). Indeed, the referee said that the evidence of violations of all three subsections was "overwhelming."

[9] SCR 20:3.2 provides that "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

19

¶41 The referee also determined that the OLR had proven a violation of the Attorney's Oath in SCR 40.15, which is enforceable via SCR 20:8.4(g).[10]

¶42 The referee found that Attorney Nora had used accusations of misconduct against others as merely a standard part of the defense of a foreclosure action, specifically to delay the action so that the client could remain in the home for as long as possible. He noted that in its sanction decision, the Seventh Circuit had found that Attorney Nora had made arguments with no reasonable expectation of success and merely for the purposes of delay, harassment, and "sheer obstinacy." The referee similarly concluded that in the Spencer representation, "[i]t is clear from the very beginning of her entrance into that case her goal was to delay a judgment of foreclosure as long as possible." The referee found that Attorney Nora knew that her attacks against Judge Potter and court personnel would "buy her more time" because the court would have to resolve her allegations of misconduct before it could return to the merits of the case.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW CONCERNING COUNTS 4-5

¶43 Counts 4-5 relate to Attorney Nora's representation of the Rinaldis. They had been the defendants in a foreclosure action brought by HSBC Bank (HSBC) in the Kenosha County circuit court (Case No. 2009CV353 or the foreclosure action). Attorney

---

[10] SCR 20:8.4(g) provides that "[i]t is professional misconduct to: . . . (g) violate the attorney's oath; . . . ."

20

Nora was not involved in that foreclosure action. HSBC was able to obtain a judgment of foreclosure and a dismissal of the Rinaldis' counterclaims. Ultimately, however, HSBC agreed to a vacation of the judgment and dismissal of the case when the Rinaldis entered into a loan modification agreement.

¶44 In June 2011, after the dismissal of the foreclosure action, the Rinaldis filed a civil action against, inter alia, Wells Fargo Bank, N.A., and the Gray Firm. (Kenosha County Case No. 2011CV1477) The defendants filed motions to dismiss in response to the complaint. Attorney Nora appeared in Case No. 2011CV1477 at the end of August 2011. Approximately one week after filing her notice of appearance, Attorney Nora filed a motion to dismiss Case No. 2011CV1477 without prejudice.

¶45 The circuit court, however, did not have a chance to rule on the pending motion to dismiss because on October 14, 2011, Attorney Nora filed a bankruptcy petition on behalf of the Rinaldis in the United States Bankruptcy Court for the Eastern District of Wisconsin. HSBC filed a notice of claim regarding the note and mortgage (and presumably the loan modification agreement) signed by the Rinaldis. Attorney Nora filed an objection to the bank's proof of claim and then filed an adversary action against, inter alia, HSBC, Wells Fargo, the Gray Firm (and certain of its lawyers), and the Litchfield Cavo law firm (and one of its lawyers who had appeared for Wells Fargo in Case No. 2011CV1477). In the objection, Attorney Nora alleged that the note lacked consideration, that two assignments of the mortgage were null and void, that a third assignment of

21

the mortgage was a forgery, and that HSBC was not the owner or holder of the note. In the adversary action, Attorney Nora alleged claims of common law fraud, abuse of legal process, violations of the federal Fair Debt Collection Practices Act, violations of the federal Racketeering and Corrupt Practices Act, breach of contract, and tortious interference with prospective economic opportunity.

¶46 United States Bankruptcy Judge Susan Kelley rejected the Rinaldis' objection to HSBC's proof of claim, including Attorney Nora's claim that the bank had produced a forged endorsement of the note and mortgage. Judge Kelley also recommended that the district court dismiss the claims alleged in the adversary action. Judge Kelley characterized some of the claims asserted by Attorney Nora in both the objection and the adversary proceeding as "frivolous" and "preposterous."

¶47 Attorney Nora filed (1) an appeal from Judge Kelley's decision rejecting the objection to HSBC's proof of claim and (2) an objection to Judge Kelley's recommendation to the district court to dismiss the adversary proceeding. The appeal and objection were consolidated before United States District Court Judge J.P. Stadtmueller.

¶48 Judge Stadtmueller issued a decision on October 31, 2013, in which he affirmed Judge Kelley's dismissal of the objection to HSBC's proof of claim and adopted Judge Kelley's proposed findings and conclusions regarding the dismissal of the adversary proceeding. Judge Stadtmueller further held that Attorney Nora had failed to comply with the Federal Rules of

22

Bankruptcy Procedure regarding appeals. He stated that the Rinaldis had "failed to provide a cogent statement of the issues on appeal" and had provided briefs "that are largely unintelligible" and that were "an unfocused, stream-of-consciousness-style recitation of general grievances the debtors have asserted in various forms since the origination of this litigation in state court." He further held that any issues regarding the assignment of the mortgage did not affect HSBC's rights as holder of the Rinaldis' note. He described the claims in the adversary proceeding as "generally meritless" and expressed concern that the Rinaldis were simply attempting to stay the foreclosure of their home, meaning that their claim of abuse of process would apply more to them than to the lender and the other defendants. Finally, Judge Stadtmueller warned the Rinaldis (and Attorney Nora) "that they will find themselves in very deep trouble if additional meritless filings find their way to this Court (seeing as this Court has already had the responsibility of dealing with their all-but-frivolous filings in Case No. 12-CV-1065) and may very well result in significant sanctions."

¶49 Attorney Nora filed a motion to amend the findings of fact, conclusions of law, and judgment entered by Judge Stadtmueller. Her motion alleged the same kind of arguments that she had previously made in her filings to both the bankruptcy court and the district court, including that the mortgage had been fraudulently assigned by Wells Fargo. On December 13, 2013, Judge Stadtmueller issued an order denying

23

the motion, which stated that the Rinaldis had failed to identify any manifest error of law or fact that would entitle them to relief under Fed. R. Civ. Proc. 59(e) and which explicitly warned them (and Attorney Nora) that "any further frivolous submissions will result in an award of appropriate sanctions against the Rinaldis' attorney."

¶50 On December 23, 2013, Attorney Nora filed a notice of appeal from the orders issued by Judge Stadtmueller. On February 11, 2014, she filed a motion to withdraw as the Rinaldis' counsel in all three of the applicable federal courts (bankruptcy court, district court, and court of appeals). Judge Kelley heard the motion to withdraw on March 4, 2014, along with a motion by the U.S. Trustee to dismiss the bankruptcy proceeding due to the Rinaldis' failure to make payments. Judge Kelley dismissed the bankruptcy proceeding, but retained jurisdiction over the sanction motion filed by the defendants in the adversary proceeding. Judge Kelley also denied Attorney Nora's motion for reconsideration of her opinion that dismissal of the bankruptcy proceeding would moot the appeal Attorney Nora had filed on behalf of the Rinaldis. In that motion for reconsideration, Attorney Nora essentially sought to dismiss the adversary proceeding.

¶51 On April 2, 2014, Attorney Nora filed a motion to intervene personally in the Rinaldi case before Judge Stadtmueller. On that same date, Attorney Nora filed a joint motion on behalf of herself and the Rinaldis for relief under Fed. R. Civ. Proc. 60(b) from Judge Stadtmueller's prior orders.

24

The motion to intervene and the motion for relief under Rule 60(b) repeated the same arguments Attorney Nora had been making in her prior filings on behalf of the Rinaldis. The intervention motion also asserted that Attorney Nora had a right to intervene personally to defend against the sanction motion filed by the defendants in the adversary proceeding.

¶52 On April 9, 2014, Judge Stadtmueller issued an order granting Attorney Nora's motion to withdraw and denying the motions to intervene and for relief under Rule 60(b). Judge Stadtmueller also sanctioned Attorney Nora for filing the latter two motions:

> Last, as to Ms. Nora's motion to intervene and for Rule 60(b) relief, the Court notes that it has no choice but to impose sanctions against Ms. Nora. In the Court's last order, it noted that "[w]ith this order, the Court hereby makes clear that any further frivolous submissions will result in an award of appropriate sanctions against the Rinaldis' attorney." (Docket #37 at 3 (emphasis in original)). Despite that extremely clear warning, Ms. Nora filed the frivolous motions in question. Therefore, the Court will enter a sanctions award against her, using its inherent authority to do so under Chambers v. Nasco, Inc., 501 U.S. 32 (1991). The Court will direct that Ms. Nora pay to the Clerk of the Court $1,000.00 for deposit into the Eastern District of Wisconsin Pro Bono fund. And let the Court be clear: any further frivolous filings will result in even higher sanctions against Ms. Nora.

¶53 The Seventh Circuit affirmed Judge Stadtmueller's orders. It stated that to the extent the adversary claims were not moot, it affirmed the orders dismissing the adversary proceeding for the reasons stated by the district court. It also relied on an exception to the mootness doctrine that

25

mootness should not be allowed where the losing party causes an appeal to become moot in order to avoid the preclusive effect of an unfavorable ruling.  It characterized Attorney Nora's attempt to dismiss as a "type of gamesmanship" intended to deprive the sound decisions of the bankruptcy court and the district court of preclusive effect.  Finally, the Seventh Circuit affirmed the sanction award against Attorney Nora, stating that her obligations to her clients did not excuse her disregard of the district court's clear and repeated warnings against continued submission of frivolous and needlessly argumentative filings.

¶54 Like Count 1, Count 4 alleged that certain actions taken by Attorney Nora (specifically the filing of frivolous motions to intervene personally and for relief from prior court orders under Fed. R. Civ. Proc. 60(b)(2)) in the Rinaldi matter had violated SCR 20:3.1(a).  As with Count 1, the referee recommended that this court dismiss Count 4 on the ground that the lack of specification of the particular subsection of SCR 20:3.1(a) in the second amended complaint violated Attorney Nora's due process rights.

¶55 With respect to Count 5, the referee concluded that the OLR had sufficiently proven that Attorney Nora had violated SCR 20:3.2 by filing a frivolous motion to intervene and a frivolous motion for relief under Rule 60(b) in the district court, after that court had warned her that further frivolous submissions would result in an award of sanctions.

**REFEREE'S RECOMMENDATION REGARDING DISCIPLINE**

26

¶56 The OLR sought a one-year suspension of Attorney Nora's license to practice law in Wisconsin, comparing her misconduct to the misconduct found to have been committed by Attorney Joseph Sommers. See In re Disciplinary Proceedings Against Sommers, 2012 WI 33, 339 Wis. 2d 580, 811 N.W.2d 387 (Sommers I); In re Disciplinary Proceedings Against Sommers, 2014 WI 103, 358 Wis. 2d 248, 851 N.W.2d 458 (Sommers II). The referee found this comparison to be unhelpful because "[Attorney] Nora's misconduct in this case is on a level all of its own." Unlike in the Sommers cases, Attorney Nora's misconduct was not limited to one particular case, court, or judge. The referee said that "[i]t is clear that [Attorney] Nora generally practices law in a highly offensive and disrespectful fashion" and that she intentionally acts in an offensive, disrespectful, and difficult manner in order to delay the foreclosure proceedings against her clients, which she views as doing her job for them.

¶57 The referee stated that Attorney Nora had shown no remorse for her conduct. To the contrary, she believes that her tactics are appropriate in defending against foreclosures at all costs. The referee twice stated that Attorney Nora sees herself as a hero for actions in defending against foreclosures, which the courts fail to appreciate. She does not understand the difference between a vigorous and zealous defense and professional misconduct. As an example, the referee pointed to the "many false accusations" that Attorney Nora made against Judge Potter, which she had failed to substantiate. The referee

27

further stated that, based on his observation of Attorney Nora during this disciplinary proceeding, he believed that, if given the chance, Attorney Nora would continue to engage in the type of misconduct at issue in this proceeding. He noted that the misconduct in the prior disciplinary cases against her was similar to the misconduct found in this proceeding. In sum, the referee concluded that Attorney Nora "represents a serious and ongoing threat to the public, the judges before which she appears, opposing counsel, and the legal profession." He therefore recommended that the court suspend Attorney Nora's license for a period of two years. He also recommended that the reinstatement of her license be conditioned "on good faith efforts by her to pay the tremendous costs incurred by the OLR and the lawyers of Wisconsin in this disciplinary proceeding."

**ATTORNEY NORA'S APPEAL**

¶58 When we review a referee's report, we will affirm a referee's findings of fact unless they are found to be clearly erroneous, but we review the referee's conclusions of law on a de novo basis. In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. We determine the appropriate level of discipline to impose given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶59 Attorney Nora's opening brief on her appeal lists 18 separate issues (some with multiple subparts) that she would

28

like this court to address.[11]  A number of those issues or sub-issues, however, are not sufficiently developed in Attorney Nora's brief, and we will not address them in this decision. Parsons v. Associated Banc-Corp., 2017 WI 37, ¶39 n.8, 374 Wis. 2d 513, 893 N.W.2d 212.

¶60 The first group of arguments on appeal by Attorney Nora allege due process violations.  She objects initially to the fact that the OLR included 174 proposed findings of fact with citations to the record in its post-hearing brief, arguing that these statements were "new factual allegations" and that the inclusion of them deprived her of due process before the referee.

¶61 Attorney Nora contends that these "new factual allegations" were improper because the OLR did not obtain a

---

[11] With each of her three appellate briefs, Attorney Nora filed a set of requests asking this court to take judicial notice of certain documents under Wis. Stat. § 901.01(4) and 901.02(2)(b).  The documents at issue, copies of which Attorney Nora appended to her requests, appear to be, for the most part, filings from various underlying court proceedings.  The OLR did not object to this court taking judicial notice of the existence and contents of the documents.  Accordingly, we take judicial notice of the existence and of the contents of the requested documents.  We do not take judicial notice of the truth of any statements included in those documents.  In addition, we do not take judicial notice of the Rinaldis' Chapter 13 Plan in their bankruptcy proceeding because no such document was found as Exhibit F to Attorney Nora's April 2, 2019 second set of requests for judicial notice in support of her reply brief.  We also do not take judicial notice of the List of Nonpriority Unsecured Claims from Attorney Nora's personal bankruptcy proceeding that was attached as Exhibit G to her April 2, 2019 second set of requests for judicial notice.  That document is not relevant to Attorney Nora's reply brief.

"cause-to-proceed" determination as to most of those facts from a panel of the preliminary review committee (the PRC) under SCR 22.11(2) before the evidentiary hearing in this proceeding. Attorney Nora apparently relies on the language in that rule which states that "[t]he complaint shall set forth only those facts and misconduct allegations for which the preliminary review panel determined there was cause to proceed . . . ." Attorney Nora reads this clause literally to mean that each allegation of fact in a disciplinary complaint must be specifically approved by the PRC. She then attempts to extend the language to require PRC approval of proposed findings of fact in a post-hearing submission. She does not offer any case law support for such an interpretation, nor does she analyze how this language from SCR 22.11(2) fits within the structure of the disciplinary process described in SCR ch. 22.

¶62 Attorney Nora's argument is misplaced. The procedural provisions in SCR ch. 22 regarding the presentation of a matter to a panel of the PRC do not require or even contemplate that the PRC will make any factual determinations about the information submitted by the OLR's director. The director is required to submit to the PRC panel the OLR's "investigative reports, including all relevant exculpatory and inculpatory information obtained and appendices and exhibits, if any." SCR 22.06(1). The PRC panel does not make credibility determinations or decide what the specific facts regarding the matter are. What it does do is determine, given the inculpatory and exculpatory information presented to it, whether there is

30

sufficient plausible evidence for the OLR to proceed with a formal disciplinary claim against the respondent attorney. The PRC panel does not review a proposed complaint and approve or disapprove specific factual allegations in a complaint.

¶63 Indeed, a finding of cause to proceed by a PRC panel does not automatically lead to the filing of a disciplinary complaint. A finding of cause to proceed merely authorizes the OLR director to "decide on the appropriate discipline or other disposition to seek in the matter." SCR 22.08(2). In some cases the director will determine that the appropriate next step is to file a formal complaint in this court asking it to impose discipline against the respondent attorney. SCR 22.08(2)(c). In other words, the formal complaint can be drafted and filed after the PRC panel has completed its work. In other cases, however, the director is authorized to obtain the respondent attorney's agreement to a consensual reprimand or to divert the matter to an alternative to discipline program. SCR 22.08(2)(a)-(b).

¶64 That the OLR is not bound to obtain approval of every factual allegation in a complaint or every proposed finding of fact in a post-hearing brief is demonstrated by the fact that SCR 22.11(5) authorizes the OLR to amend a complaint "as provided in the rules of civil procedure." If Attorney Nora's view were correct, that subsection would also need to state that a complaint may be amended only if a PRC panel first approves the amended allegations. The rule does not, however, contain any such requirement.

31

¶65 In any event, in this case a PRC panel made a cause-to-proceed determination as to the five misconduct claims that appear in all three versions of the OLR's complaint. The amendments in both the first amended complaint and the second amended complaint did not add entirely new instances of conduct or new misconduct claims; they simply corrected some mistakes in the factual allegations. Such amendments are clearly permitted under SCR 22.11(5) and do not require a second (or third) approval by a PRC panel under SCR 22.11(2). Similarly, once a PRC panel has found cause to proceed on claims that are subsequently included in a formal complaint, there is no requirement in SCR 22.11 that the OLR obtain further approval of any particular summary of facts from the evidence introduced in the case or in any particular set of proposed findings of fact. To the extent that the OLR was able to flesh out the factual allegations of its second amended complaint by presenting evidence at the evidentiary hearing, that is entirely consistent with due process. Indeed, that is the normal course of proceedings in all civil and criminal cases. Accordingly, the OLR's inclusion of proposed findings of fact in its post-hearing brief did not violate SCR 22.11(2).

¶66 Attorney Nora also argues that the inclusion of the 174 allegedly "new" factual allegations in the OLR's post-hearing brief violated her due process rights under In re Ruffalo, 390 U.S. 544, 551 (1968). In that matter, however, the U.S. Supreme Court held that it was a violation of due process for the Ohio disciplinary authorities (the local bar

association) to amend their disciplinary complaint during the disciplinary hearing and after the respondent attorney had testified in order to allege an entirely new claim of misconduct.[12] Id. at 550-51. That holding has no bearing on this proceeding because the OLR never attempted to allege an entirely new claim of misconduct in its amended complaints or in its post-hearing brief. The five counts in the OLR's original complaint identified what conduct by Attorney Nora violated which rules of professional conduct. Those five claims remained the same in each of the OLR's amended complaints. The referee's conclusions of law likewise determine that the same conduct by Attorney Nora violated the same rules that the OLR identified in its complaints. There is no due process violation under Ruffalo in this proceeding.

¶67 Similarly, Attorney Nora alleges that the 174 "new factual allegations" in the OLR's post-hearing brief constituted a due process violation under this court's decision in State v. Hersh, 73 Wis. 2d 390, 243 N.W.2d 178 (1976). In that case, this court found no due process violation where, under a previous attorney disciplinary regime, the Board of State Bar Commissioners was allowed to amend a complaint against a respondent attorney to conform the complaint to the evidence upon approval by a sufficient number of members of the board and

---

[12] The appeal in Ruffalo actually arose out of a decision by the Sixth Circuit to disbar Attorney Ruffalo from practicing in that court, but the Sixth Circuit essentially relied on the Ohio state disciplinary proceeding in reaching its decision. In re Ruffalo, 390 U.S. 544, 545, 547 (1968).

an adjournment of the disciplinary hearing occurred. Attorney Nora points to a statement in that decision that a respondent attorney's due process rights in a disciplinary proceeding "encompasses only [the attorney's] right to prior notice of charges, [the attorney's] right to prepare to defend these charges, and [the attorney's] right to a full hearing on these charges." Id. at 398. We find no violation of these rights arising out of the OLR's submission of proposed findings of fact in a post-hearing brief. Attorney Nora fails to demonstrate that those proposed findings of fact materially changed the nature of the allegations against her or the ethical rules which she was alleged to have violated. The five counts in each of the OLR's three complaints, which remained consistent, adequately advised Attorney Nora which of her actions had violated which rules of professional conduct. She had sufficient notice of the charges to be able to prepare to defend against those claims. She was accorded a four-day hearing at which to question the OLR's witnesses and to present her own testimony and exhibits. Her due process rights were duly protected.

¶68 Attorney Nora briefly alleges that her due process right to prepare and present a defense was also violated by various rulings by the referee. These allegations are not sufficiently developed to warrant specific responses. Even if we were to address them on the merits, we see no due process violations as a result of the referee's orders. Attorney Nora had a sufficient opportunity to conduct discovery, to name

34

witnesses, and to prepare and present a defense. Her failure to avail herself of some of those opportunities does not mean that her due process rights were violated.

¶69 The second group of arguments in Attorney Nora's appeal is styled as a broad challenge to the referee's factual findings. Her arguments, however, challenge the referee's legal conclusions that she violated SCR 20:3.2 in Counts 2 and 5 as much as she challenges any particular factual findings. She argues that under SCR 20:3.2, the referee erred in concluding that she had improperly delayed both the Spencer matter and the Rinaldi matter. She contends that a lawyer can violate that rule only if the lawyer's actions had no substantial purpose other than to delay. Since she alleges that she acted in good faith in taking the actions she took, there could be no conclusion of improper delay. Moreover, she argues that her conduct did not actually result in delay of either the Spencer matter or the Rinaldi matter.

¶70 Attorney Nora points to an American Bar Association comment to Model Rule 3.2 that the question under this rule is whether a competent lawyer acting in good faith would regard the course of action at issue as having some substantial purpose other than delay. What Attorney Nora misses is that this comment demonstrates that the pertinent question under the rule is one of the lawyer's purpose or intent in pursuing the action(s) at issue. Determining a person's intent requires a referee to make an inference from the lawyer's actions and statements under the circumstances. See Welytok v. Ziolkowski,

35

2008 WI App 67, ¶26, 312 Wis. 2d 435, 752 N.W.2d 359 (quoting Pfeifer v. World Serv. Life Ins. Co., 121 Wis. 2d 567, 569, 360 N.W.2d 65 (Ct. App. 1984)). Here, the referee drew factual inferences from the facts presented that Attorney Nora's purpose in taking a number of specified actions was to delay the Spencer matter and the Rinaldi matter. To the extent that she challenges these factual inferences on appeal, Attorney Nora must show that the referee's inferences were clearly erroneous (i.e., that each inference was against the great weight and clear preponderance of the evidence). Phelps v. Physicians Ins. Co. of Wisconsin, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615.

¶71 Attorney Nora does not meet that high burden. There was ample evidence with respect to both the Spencer matter and the Rinaldi matter to support the referee's determination that Attorney Nora's purpose was to place whatever road blocks she could construct in the path of concluding the various pieces of litigation.

¶72 In the Spencer matter, Attorney Nora made a host of accusations against Judge Potter, claiming that he and his court staff had engaged in multiple ex parte communications with opposing counsel, that he had conducted "secret proceedings," and that he had been "collaborating" with opposing counsel and had been "complicit in the manipulation of the proceedings and of the record." United States District Court Judge Crabb determined that Attorney Nora's subsequent attempt to remove the case to federal court was not objectively reasonable. Instead

36

of accepting the district court's ruling, Attorney Nora twice moved for reconsideration of Judge Crabb's remand order, resulting in Judge Crabb finding that her reconsideration requests were without basis and awarding costs and fees to the opposing party. Attorney Nora then prolonged the federal proceedings by filing an appeal that the Seventh Circuit found to be frivolous, ultimately resulting in an award of sanctions against her.

¶73 In the Rinaldi matter, Attorney Nora attempted to drag out the matter by raising objections and arguments that the federal bankruptcy judge characterized as frivolous. She then attempted to intervene personally and to move for relief under Fed. R. Civ. Proc. 60(b). The federal district court again determined that Attorney Nora's motions had been frivolous and imposed sanctions. On appeal the Seventh Circuit characterized Attorney Nora's actions as "gamesmanship" that it would not permit, and it affirmed the imposition of sanctions due to Attorney Nora's frivolous filings. The referee's inferences of a purpose of delay by Attorney Nora in both matters were not clearly erroneous.

¶74 Although it too falls within the portion of her argument regarding a lack of evidence to support the referee's factual findings, Attorney Nora's argument regarding Count 3 (violation of the attorney's oath) is also more legal in nature than an allegation that the referee's factual findings were clearly erroneous. She contends that her actions on behalf of Ms. Spencer arose from her constitutionally protected obligation

37

as a lawyer to seek redress from the courts on behalf of her client. As this court already explained in Nora II, however, a lawyer's fight for a client's cause, however noble the lawyer might believe it to be, must be conducted within the ethical rules. Nora, 380 Wis. 2d 311, ¶41. Attorney Nora has not demonstrated any error in the referee's factual findings about Attorney Nora's specific actions in the Spencer matter or in the referee's determination that her actions constituted an ongoing pattern of conduct to harass other parties and judicial officers and to delay the proceedings. The Seventh Circuit's description of her conduct, quoted in paragraph 37 above, supports the referee's findings in this regard. The referee's factual findings and his inference that Attorney Nora's actions were intended to harass and to delay are not clearly erroneous. A determination that Attorney Nora exceeded the bounds of ethical advocacy by her conduct does not violate her or her clients' constitutional rights to petition the judicial branch of government for redress.

¶75 Attorney Nora includes a number of other general allegations that the referee erred in his evidentiary rulings, misapplied burdens of proof, and made unsupported findings in the discussion section of his report. These allegations are insufficiently developed, and we need not address them here.

¶76 Having concluded that Attorney Nora's appellate arguments are without merit, we accept the referee's factual findings and agree with his legal conclusions that the OLR

proved the ethical violations alleged in Counts 2, 3, and 5 of its second amended complaint.

**OLR'S CROSS-APPEAL**

¶77 We now turn to the OLR's cross-appeal of the dismissal of Counts 1 and 4 on the ground that the versions of the OLR's complaint failed to provide adequate notice as to which subsection of SCR 20:3.1(a) her conduct had violated. First, we start from the observation that from its original complaint through to its second amended complaint, the OLR identified the specific actions by Attorney Nora that it alleged violated SCR 20:3.1(a). In the Spencer matter, the alleged misconduct was removing the foreclosure action against Ms. Spencer to the federal court with no colorable basis for federal jurisdiction and then filing frivolous motions for reconsideration of the federal district court's remand order. In the Rinaldi matter, the alleged misconduct was filing in the federal district court a frivolous motion to intervene personally and a frivolous motion for relief from prior orders under Fed. R. Civ. Proc. 60(b).

¶78 Attorney Nora therefore knew the basis for those counts from the very beginning of the proceeding. She litigated against those counts before the referee for more than two years, through motions to dismiss, through pretrial motions, through a four-day evidentiary hearing, and through the filing of a post-hearing brief. While in one early filing she did note that Count 4 of the complaint (specifically, paragraph 90) did not identify the subsections of SCR 20:3.1(a), she never alleged

39

that the failure to identify the subsections of SCR 20:3.1(a) constituted a violation of her due process right to notice of the misconduct charges against her. Through the filing of her post-hearing brief, she never alleged that she was unable to defend against Count 1 and 4 because the OLR's complaints had not specified which subsection of SCR 20:3.1(a) her actions had violated. Had the referee not raised the issue sua sponte after the parties had concluded their post-hearing briefs, the litigation of the case before the referee would have concluded with no such claim having been made.

¶79 Under these facts, we conclude that Attorney Nora forfeited any argument that Counts 1 and 4 of the OLR's complaints violated her due process rights. The issue raised by the referee is a question of notice in pleading. A respondent party cannot ignore an alleged defect in pleading all the way through the final evidentiary hearing (or trial) of a case and through post-hearing briefing, and then allege that the complainant's claim must be dismissed because it failed to provide adequate notice of the claim against the respondent. Permitting respondents to obtain dismissal of claims under those circumstances would endorse "gotcha" tactics and would undermine the orderly conduct of a disciplinary proceeding or any other civil action. The prejudice of such a ruling is evident here. Because the alleged error by the OLR was one of pleading, it could have been easily remedied through the filing of an amended complaint if Attorney Nora had alleged a due process violation at any point during the actual litigation of the case. By

litigating the case through the evidentiary hearing, she prevented the OLR from having an opportunity to remedy any alleged deficiency in its complaint.  Moreover, the fact that she actually defended against Counts 1 and 4 at the evidentiary hearing undercuts an assertion that she lacked sufficient notice to prepare a defense on those counts.

¶80  In addition, the fact that the referee ultimately raised the issue does not affect this analysis.  Attorney Nora's failure to raise the issue through the evidentiary hearing and post-hearing briefing still meant that her conduct in litigating the case through the evidentiary hearing prevented the OLR from amending those counts and obtaining a decision on their merits, whether or not the referee subsequently raised the issue.  The referee's raising of the issue after the evidentiary hearing was complete still prevented the OLR from correcting an alleged pleading deficiency.  Accordingly, we conclude that under these circumstances Counts 1 and 4 should not be dismissed based on a claimed due process violation that was clearly forfeited by Attorney Nora.

¶81  The referee concluded that, if this court rejected his recommended dismissal of Counts 1 and 4 on due process grounds, the OLR did prove in each of those two counts that Attorney Nora had violated SCR 20:3.1(a) by clear, satisfactory and convincing evidence.  We agree with those conclusions.

## APPROPRIATE LEVEL OF DISCIPLINE

¶82  Having determined that Attorney Nora engaged in professional misconduct as alleged in all five counts of the

41

amended complaint, we turn to the issue of the appropriate level of discipline. In assessing what is the proper level of discipline to impose, we consider various factors, including: "(1) the seriousness, nature and extent of the misconduct; (2) the level of discipline needed to protect the public, the courts, and the legal system from repetition of the attorney's misconduct; (3) the need to impress upon the attorney the seriousness of the misconduct; and (4) the need to deter other attorneys from committing similar misconduct." In re Disciplinary Proceedings Against Carroll, 2001 WI 130, ¶40, 248 Wis. 2d 662, 636 N.W.2d 718.

¶83 It cannot reasonably be disputed that Attorney Nora's misconduct is serious. Although she criticizes as "inflammatory" the referee's description of the tactics she used, we view them as fair comments on Attorney Nora's actions. Quite simply, she has repeatedly abused the legal system to pursue her agenda of delaying foreclosure actions by any means possible.

¶84 This is not an isolated incident of a lawyer allowing the lawyer's zeal in the heat of battle to overcome the lawyer's better judgment. This is now the third time that Attorney Nora is being disciplined for similar conduct. In just Nora II and this case, she has been found to have filed frivolous claims or taken frivolous positions in five separate actions. Clearly, there is a lengthy pattern of similar misconduct. She has been sanctioned multiple times in multiple courts for her frivolous filings.

¶85 Her misconduct does pose a real threat to the administration of justice. Not only has she improperly used the tools of the legal system to delay the completion of civil actions, she has repeatedly attacked the other participants in those actions (judges, lawyers, and litigants) with claims of unethical or even criminal conduct. She alleged that Judge Potter had abandoned his role as a neutral magistrate to manipulate the record and to collude with opposing counsel to reach a corrupt result. She accused Judge Crabb of engaging in a personal campaign of libel against her. She accused the judges of the Seventh Circuit of being biased against the rights of homeowners. Not only was she unwilling to accept the rulings of these judicial officers and therefore repeatedly challenged their rulings after the fact, she labeled those judges who did not accede to her tactics as being biased and unethical. Lawyers do not have to agree with a judge's rulings, but the legal system cannot function properly and maintain the necessary respect in the eyes of the public if lawyers baselessly attack the integrity of the individuals who preside in our courts.

¶86 The referee found that Attorney Nora had not expressed any real remorse for her conduct throughout the proceedings before him. Rather, her conduct in litigating this case demonstrated that she continued to believe her win-at-all-costs approach in foreclosure cases was justified. He found that if she again held a valid license to practice law, she would not hesitate to use the same improper tactics. In part, he reached this conclusion because he believed that there was little chance

43

that Attorney Nora will ever understand why her actions were wrong and what damage her misconduct had caused. Further, his belief was supported by the fact that during this disciplinary proceeding, Attorney Nora had reached into the same playbook, accusing the investigators and attorneys acting on behalf of the OLR of being biased and having engaged in serious professional misconduct, even in criminal activities.

¶87 During oral argument before this court, Attorney Nora did acknowledge, to a limited degree, that she had crossed an ethical line. She admitted that she had been overzealous at times and had shown an offensive personality in some of her filings, but she indicated that her fault had been in the incorrect manner in which she had articulated her positions. Attorney Nora did not show that she accepted and admitted that the actual positions and actions she took were improper, even though multiple courts had found multiple filings submitted by her to be frivolous and had imposed sanctions on her.

¶88 Clearly, given her arguments to this court, Attorney Nora retains the same zeal for her cause of fighting against residential property lenders and mortgage holders. While we recognize that she has now made some show of acknowledging a limited responsibility for her conduct, we share the referee's concern that Attorney Nora has not grasped or accepted the extent of her misconduct and that, at this point, she would be highly likely to repeat that misconduct if she held a valid license to practice law. We therefore conclude that a substantial period of suspension is necessary to impress upon

44

her the seriousness of her misconduct and to protect the public, the courts, and the legal system from a repetition of that misconduct.

¶89 The referee commented that Attorney Nora's professional misconduct "is at a level all of its own, not previously seen in any Wisconsin disciplinary cases." That observation seems, in our view, to be somewhat of an overstatement. For example, we revoked the license of Attorney Alan Eisenberg when he not only commenced and continued a frivolous claim to harass an opposing party, but repeatedly made misrepresentations to damage the reputation of an opposing party and to gain leverage in a pending divorce action. In re Disciplinary Proceedings Against Eisenberg, 2010 WI 11, 322 Wis. 2d 518, 778 N.W.2d 645. While Attorney Nora's misconduct does share some similar traits with Attorney Eisenberg's misconduct, his prior disciplinary history and the culpability of his actions exceed those of Attorney Nora. We therefore do not believe that a revocation of her license is necessary or appropriate.

¶90 On the other hand, we agree with the referee that the OLR's initial analogy to the suspensions imposed on Attorney John Widule and Attorney Joseph Sommers is inadequate. The Sommers I case, in which we imposed a 30-day suspension involved unusual mitigating factors and is particularly inapt, both factually and legally. The Widule case,[13] in which we imposed a

---

[13] In re Disciplinary Proceedings Against Widule, 2003 WI 34, 261 Wis. 2d 45, 660 N.W.2d 686.

45

six-month suspension did involve similar conduct in commencing and continuing a frivolous action, but that matter is also factually distinguishable. Attorney Widule's misconduct was limited to one client representation and he had no prior record of receiving public discipline. This is now the third disciplinary proceeding against Attorney Nora, and it involves the fourth and fifth actions in which Attorney Nora took frivolous positions. Attorney Nora's professional misconduct warrants a significantly higher level of discipline than the six-month suspension we imposed on Attorney Widule.

¶91 In addition, this court has generally followed a practice of imposing progressive discipline. In re Disciplinary Proceedings Against Netzer, 2014 WI 7, ¶49, 352 Wis. 2d 310, 841 N.W.2d 820 ("This court has long adhered to the concept of progressive discipline in attorney regulatory cases."); In re Disciplinary Proceedings Against Nussberger, 2006 WI 111, ¶27, 296 Wis. 2d 47, 719 N.W.2d 501 (". . . we have frequently followed the concept of progressive discipline, especially in cases involving a pattern of similar misconduct."). The misconduct in this case is similar in nature to the misconduct found in Nora II, where we imposed a one-year suspension. A longer suspension is appropriate here.

¶92 Having considered all of the factors discussed above, we conclude that a two-year suspension of Attorney Nora's license to practice law in Wisconsin is necessary to impress upon her the seriousness of her misconduct and to protect the

46

courts and the legal system from a repetition of that misconduct.

¶93 In his report the referee commented that he recommended a two-year suspension, "consecutive to any current suspensions." His report, however, was issued while Attorney Nora was serving the one-year suspension imposed in Nora II. If this case had concluded while that one-year suspension remained in effect, it would have been logical to begin the current suspension following the completion of the prior suspension.

¶94 Generally, disciplinary suspensions imposed by this court are prospective—i.e., they commence at the time that the suspension is imposed or within a few weeks thereafter. Commencing the two-year suspension imposed in this proceeding as of April 30, 2019, when the one-year suspension from Nora II expired, would make the current suspension retroactive. "Generally, a retroactive suspension is disfavored in the absence of some compelling circumstance." In re Disciplinary Proceedings Against Woods, 2011 WI 46, ¶2, 334 Wis. 2d 324, 800 N.W.2d 875 (citation omitted). We find no compelling circumstance here that would warrant beginning the current two-year suspension more than one year ago.

¶95 We do, however, recognize that the COVID-19 pandemic and the attendant matters that have consumed the court over the last several months have impacted the timing of this decision. We therefore conclude that it is appropriate to make the two-year suspension effective as of April 1, 2020.

47

¶96 The referee also recommended that this court condition the reinstatement of Attorney Nora's license on "good faith efforts by her to pay the tremendous costs incurred by the OLR and the lawyers of Wisconsin in this disciplinary proceeding." We do not impose this condition. First, such a condition would ordinarily be unnecessary because a lawyer's reinstatement petition from a suspension of six months or more must show that the lawyer has fully complied with the terms of the suspension order, which would ordinarily include a requirement that the lawyer pay the costs of the disciplinary proceeding. See SCR 22.29(4)(c). Further, the condition is not necessary in this case because, as discussed below, we are not ordering Attorney Nora to pay the costs of this proceeding pursuant to the OLR's request.

¶97 We do, however, determine that it is necessary and appropriate to impose a different condition on any reinstatement proceeding that Attorney Nora may initiate. A number of courts have imposed monetary sanctions on her individually as a result of her filing frivolous documents. Paying those monetary sanctions is an appropriate way for Attorney Nora to demonstrate that she has accepted responsibility for her actions. Consequently, we require as a condition of reinstatement that any reinstatement petition filed by Attorney Nora (1) identify each monetary sanction amount that has been imposed on her by any court and that is outstanding as of the date of this decision and (2) allege that she has made a good faith effort to pay all such sanction amounts. She must then prove during the

48

reinstatement proceedings before the referee that she has made a good faith effort to pay all of the sanction amounts identified in her petition. The failure of Attorney Nora to meet these conditions will be sufficient grounds for the dismissal of her reinstatement petition.

¶98 The OLR does not request any restitution award. Attorney Nora's misconduct at issue did not involve her retaining funds that should be delivered to others. Consequently, we do not include restitution in our order.

¶99 Finally, we turn to the issue of costs. Attorney Nora filed an objection to the OLR's statement of costs and to the referee's recommendation regarding costs, based in part on the fact that the OLR did not provide an itemization initially with its statement of costs and the referee submitted his cost recommendation before Attorney Nora filed her objection. After oral argument, we issued an order that directed the OLR to file a supplemental statement of appellate costs with an attached full itemization of costs and that permitted Attorney Nora to file a new, comprehensive objection.

¶100 One of Attorney Nora's objections to a cost award was that she has been pursuing a personal bankruptcy proceeding in the United States Bankruptcy Court for the District of Minnesota (the Minnesota bankruptcy court). On June 15, 2020, the OLR filed a Revised Recommendation Regarding Costs. It noted that the Minnesota bankruptcy court had recently issued a discharge in bankruptcy to Attorney Nora. It requested that the court not

order Attorney Nora to pay the costs of this disciplinary proceeding.

¶101 Under the particular circumstances of this matter and in light of the OLR's request, we will not require Attorney Nora to pay the costs of this disciplinary proceeding.[14]

¶102 IT IS ORDERED that the license of Wendy Alison Nora to practice law in Wisconsin is suspended for a period of two years, effective April 1, 2020.

¶103 IT IS FURTHER ORDERED, that as a condition of reinstatement, any petition seeking reinstatement from the license suspension imposed in this proceeding must (1) identify each monetary sanction amount that has been imposed on her individually by any court and that is outstanding as of the date of this decision and (2) allege that she has made a good faith effort to pay all such sanction amounts. In addition, Attorney Nora must prove during the reinstatement proceedings before the referee that she has made a good faith effort to pay all of the sanction amounts identified in her petition.

¶104 IT IS FURTHER ORDERED that no costs shall be imposed upon Wendy Alison Nora in this proceeding.

¶105 IT IS FURTHER ORDERED that the administrative suspension of Wendy Alison Nora's license to practice law in Wisconsin, due to her failure to pay mandatory bar dues and her failure to file a trust account certification, will remain in

---

[14] The OLR's supplemental statement of costs indicated that the costs of this proceeding were $94,997.97.

effect until each reason for the administrative suspension has been rectified pursuant to SCR 22.28(1).

¶106 IT IS FURTHER ORDERED that Wendy Alison Nora shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶107 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement from the suspension imposed herein.  See SCR 22.28(3).